UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

APRIL DEBOER, *et al.*,

    Plaintiffs-Appellees,

-vs-                       6th Cir #14-1341
                            ED Mi #12-civ-10285

RICHARD SNYDER, *et al.*,

    Defendants-Appellants.

_____

PLAINTIFFS-APPELLEES' ANSWER TO
STATE DEFENDANTS-APPELLANTS' EMERGENCY MOTION
<u>FOR STAY PENDING APPEAL</u>

Now come April DeBoer and Jayne Rowse and their minor children, Plaintiffs-Appellees herein, by and through their undersigned attorneys, and in answer to the State Defendants-Appellants' emergency motion for stay pending appeal state as follows:

1.  On March 21, 2014, Hon. Bernard A. Friedman, Senior District Judge, granted Plaintiffs-Appellees' complaint for declaratory and injunctive relief against Michigan Governor Richard Snyder and Michigan Attorney General William Schuette for the reason that the Michigan Marriage Amendment [MMA], Const. 1963, art. 1, §25, violates the equal protection clause of U. S. Const, Am. XIV (R: 151, Findings of Fact and Conclusions of Law, pp 1-31, Pg ID 3944-3974).

2.  As stated by Judge Friedman, "the MMA impermissibly discriminates

against same-sex couples in violation of the Equal Protection Clause because the provision does not advance any conceivable legitimate state interest."  *Id.* at 18 (Pg ID 3961).[1]  More particularly, Judge Friedman also found that

> • "the MMA undermines the very aim of one of the central historical bases for civil marriage, namely, family stability".  *Id.* at 10 (Pg ID 3953);

> • eligibility to marry does not turn on "a couple's stability, criminal record, ability to procreate, parenting skills, or the potential future outcomes of their children".  *Id.* at 10-11 (Pg ID 3953-3954);

> • "the overwhelming weight of the scientific evidence supports the 'no differences' viewpoint" as to the outcomes of children raised by heterosexual couple parents and same-sex couple parents.  *Id.* at 22 (Pg ID 3965);

> • the testimony of the State Defendants-Appellants' primary witness as to child outcomes, Mark Regnerus, was "entirely unbelievable and not worthy of serious consideration", and the State Defendants-Appellants' witnesses as

---

[1]Plaintiffs-Appellees also challenged the MMA on the ground that it violates the 14th Amendment's due process clause.  With respect to that challenge, Judge Friedman stated: "In light of this determination, the Court finds it unnecessary to address whether the MMA burdens the exercise of a fundamental right under the Due Process Clause" (R: 151, Findings of Fact and Conclusions of Law at p 18, Pg ID 3961).  However, Judge Friedman also noted that "the Supreme Court has repeatedly recognized marriage as a fundamental right." *Id.* at n 5 (Pg ID 3961).

a group "clearly represent a fringe viewpoint that is rejected by the vast majority of their colleagues across a variety of social science fields." *Id.* at 13, 17 (Pg ID 3956, 3960);

•  "the MMA actually fosters the potential for childhood destabilization" to the detriment of children raised by same-sex couple parents, since these children may only have one legally recognized parent.  *Id.* at 22-23 (Pg ID 3965-3966);

•  "[t]here is, in short, no logical connection between banning same-sex marriage and providing children with an 'optimal environment' or achieving 'optimal outcomes'".  *Id.* at 24 (Pg ID 3967); and

•  "Many Michigan residents have religious convictions whose principles ... inform their own viewpoints about marriage.  Nonetheless, these views cannot strip other citizens of the guarantees of equal protection under the law. The same Constitution that protects the free exercise of one's faith in deciding whether to solemnize certain marriages rather than others, is the same Constitution that prevents the state from either mandating adherence to an established religion ... or 'enforcing private moral or religious beliefs without an accompanying secular purpose.' ...  As a result, tradition and morality are not rational bases for the MMA."  *Id.* at p 26 (Pg ID 3969) (cites omitted).

3.  On March 21, 2014, the State Defendants-Appellants[2] filed their notice of appeal in this matter along with an emergency motion for a stay pending appeal.

4.  The motion for a stay was filed in this Court rather than in the district court; the State Defendants-Appellants did not at any time file a motion in the district court for a stay pending appeal.

5.  On March 22, 2014, after directing Plaintiffs-Appellees' counsel to respond to Plaintiffs-Appellants' stay motion by noon on March 25, 2014, this Court temporarily stayed enforcement of Judge Friedman's judgment until March 26, 2014.

6.  The State Defendants-Appellants' emergency motion for a stay pending appeal should be denied for both procedural and substantive reasons:  As detailed below, the motion was wrongly filed in this Court, and it is entirely lacking in merit.

### *The State Defendants-Appellants' Motion for a Stay*

### *Was Wrongly Filed in this Court.*

7.  F. R. App. Proc. 8(a)(1)(A) provides in relevant part that "[a] party must ordinarily move first in the district court for ... a stay of the judgment ... of a district court pending appeal".  The only exception to the obligation initially to seek a stay

---

[2]Defendants-Appellants Snyder and Schuette are referred to as State Defendants-Appellants to distinguish them from Oakland County Clerk Lisa Brown, who is also a Defendant in the case.  Since taking office on January 1, 2013, and being substituted for her predecessor as a defendant, Defendant Brown has expressed her agreement with the Plaintiffs-Appellees' position in the case.

in the district court is where the movant is able to "show that moving first in the district court would be impracticable".  F. R. App. Proc. 8(a)(2)(A)(I).

8.  Strong policy considerations support the requirement that the court that issued the judgment ordinarily be the first to consider a request for a stay of its judgment:  At the time of considering a motion for a stay, the issuing court is the most fully informed about the facts and issues in the case, the issuing court has had the opportunity directly to assess the credibility of the witnesses and the weight of the evidence presented to it, and the issuing court is in the most fully informed position to assess the four-factor test applicable to the stay decision.  It is for reasons such as this that a district court's decision as to whether to grant or deny a stay is reviewed for an abuse of discretion rather than *de novo*.  *Cf.*, *e.g.*, *U. S. Student Association Foundation v. Land*, 546 F.3d 373, 380 (6th Cir 2008).

9.  In the instant case, the State Defendants-Appellants did not at any time file a motion for a stay, and, contrary to the State Defendants-Appellants' claim otherwise, Judge Friedman has not "effectively denied the stay pending appeal by failing to rule on it."  Emergency Motion at p 6.  Rather, the State Defendants-Appellants' only action relative to seeking a stay in the district court was a passing verbal reference to asking for a stay during the course of closing arguments at the conclusion of the trial.  At the time, Judge Friedman had not yet ruled on the case,

5

there was no appeal pending, and the issue of a stay was not before him. It is utterly disingenuous for the State Defendants-Appellants to claim that a motion has been "effectively denied" when no such motion was ever filed and the district court has not been presented with anything to decide. It is particularly disturbing when such a misstatement is made on behalf of the Governor and Attorney General of a state.

10. If the State Defendants-Appellants wished to seek a stay upon the issuance of the judgment, they were required to follow the same procedure as any other litigant; they should have filed a written motion and supporting brief, E.D. Mi. L. R. 7.1, after which the Plaintiffs-Appellees would have been entitled to an opportunity to submit a responsive answer and brief in that court. *Id.* The State Defendants-Appellants did not do so, however; the issue of a stay was never presented to the district court.

11. In order to avoid the requirement of first seeking a stay in the district court, the burden is on the State Defendants-Appellants to show that moving first in the district court would have been "impracticable". They have manifestly failed to meet that burden. There has been no showing whatever that Judge Friedman would not have been in a position to consider such a motion promptly and no showing whatever that he would not have, in fact, promptly considered such a motion; to the contrary, there is every reason to believe that Judge Friedman would have promptly considered

6

such a motion.

12.  For all of these reasons, the State Defendants-Appellants' motion in this Court without having first moved for a stay in the district court is an unreasonable attempt to circumvent the requirements of F. R. App. Proc. 8 and the deferential standard of review applicable in the circumstances.  For these reasons alone, the motion should be denied.

### *The facts and circumstances of this case do not meet the standard for issuing a stay of the district court's judgment.*

13.  Even if this Court reaches the merits of the motion, it should be denied. While there could be superficial appeal to the argument that preserving the status quo pending appeal is prudent, there is "little consequential importance to the concept of the status quo", *United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Regional Transit Authority*, 163 F.3d 341, 348 (6th Cir. 1998), and, in any event, such an argument cannot trump the well-settled requirement of the law that, in order to establish entitlement to a stay pending appeal, a party must satisfy the four-factor test applicable in the circumstances.  That is, in considering this question, the Court looks to –

"(1) whether the movant has a strong likelihood of success on the merits,

(2) whether the movant would suffer irreparable injury absent a stay, (3)

whether granting the stay would cause substantial harm to others, and

(4) whether the public interest would be served by granting the stay."

*U. S. Student Association Foundation v. Land*, *supra*, 546 F.3d at 380, citing *Northeast Ohio Coalition for the Homeless v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006). The State Defendants-Appellants have not established and cannot establish any of these factors. They not only ignore entirely the fact that the district court's findings of fact are entitled to deference, *Id.*, they act as if the district court has not made any factual findings at all.

14. In assessing whether the State Defendants-Appellants have met their burden of proof, it is also important to note that – contrary to the State Defendants-Appellants' claim, Emergency Motion at p 2 – the decision below does *not* "redefine marriage". One reason Plaintiffs-Appellees prevailed on their equal protection claim is that marriage is a civil contract, *cf.* M.C.L.A. §551.2, which is entirely gender-neutral with respect to its rights, duties and obligations. Granting same-sex couples the right to marry no more redefines marriage than granting women's suffrage redefined voting or ending segregation in public accommodations redefined eating in restaurants or ending the ban on inter-racial marriages redefined marriage.

15. Moreover, while the Supreme Court granted a stay in *Herbert v. Kitchen*, S Ct #13A687 –

8

• in the time since that order was entered on January 6, 2014, three more federal district courts (not including the instant case) have found same-sex marriage bans to be unconstitutional, *DeLeon v. Perry*, ___ F.Supp.2d ___ (W.D. Tex. 2014) [2014 WL 715741] (February 26, 2014); *Bostic v. Rainey*, ___ F.Supp.2d ___ (E.D. Va. 2014) [2014 WL 561978] (February 13, 2014); *Bishop v. U. S. ex rel. Holder*, 962 F.Supp.2d 1252 (D. Okla. 2014) (January 14, 2014), and two more federal district courts have found state bans on recognizing same-sex marriages lawfully performed in another state to be unconstitutional. *Tanco v. Haslam*, ___ F.Supp.2d ___ (M.D. Tenn. 2014) [2014 WL 997525] (March 14, 2014); *Bourke v. Beshear*, ___ F.Supp.2d ___ (W.D. Ky. 2014) [2014 WL 556729] (February 12, 2014); and

• unlike in *Kitchen*, which was decided on briefs, the decision in this case was based on a full trial at which the parties each had a full opportunity to present evidence, and the trial judge found as a fact that the State Defendants-Appellants' witnesses to "clearly represent a fringe viewpoint that is rejected by the vast majority of their colleagues across a variety of social science fields." *Id.* at 13, 17 (Pg ID 3956, 3960).

*(i) Likelihood of success on the merits.*

16. In asserting to this Court that they are likely to succeed on the merits of

9

their appeal, the State Defendants-Appellants –

• curiously ignore the fact that, since the decision in *U. S. v. Windsor*, 133 S.Ct. 2675 (2013), *every* federal district court that has considered the constitutionality of a state ban on same-sex marriage and/or a state ban on recognizing same-sex marriages lawfully performed in another state has found such bans to be unconstitutional applying the rational basis standard. *DeLeon v. Perry*, *supra*; *Bostic v. Rainey*, *supra*; *Bishop v. U. S. ex rel. Holder*, *supra*; *Kitchen v. Herbert*, 961 F.Supp.2d 1181 (D. Utah 2013); *Tanco v. Haslam*, *supra*; *Bourke v. Beshear*, *supra*; *Obergefell v. Wymyslo*, 962 F.Supp.2d 968 (S.D. Ohio 2013);

• overlook the fact that in *Lawrence v. Texas*, 539 U.S. 558, 574 (2003), the Supreme Court stressed that "our laws and tradition afford constitutional protection to personal decisions relating to marriage, procreation, contraception, family relationships, child rearing, and education ... Persons in a homosexual relationship may seek autonomy for these purposes, just as heterosexual persons do," and that, as noted by Justice Scalia in his dissent in *Lawrence*, 539 U.S. at 604, that decision alone "dismantles the structure of constitutional law that has permitted a distinction to be made between heterosexual and homosexual unions, insofar as formal recognition of marriage

10

is concerned"; and

> • inexplicably misunderstand what "likelihood of success on the merits" means and does not mean. Contrary to the State Defendants-Appellants' assertion that the grant of a stay in other marriage cases means that opponents of marriage equality are likely to win on the merits of their appeals in those cases, Emergency Motion at pp 6-7, such findings mean only that the appellants in those cases have "raised questions going to the merits of [their] ... claims" that are sufficiently serious "as to make them a fair ground for litigation and thus for more deliberate investigation". *Six Clinics Holding Corp., II v. Cafcomp Systems, Inc.*, 119 F.3d 393, 402 (6th Cir. 1997).

17. For the reasons well-articulated in Judge Friedman's opinion below, as well as in the other post-*Windsor* marriage and marriage-recognition decisions, despite a long and deeply rooted history of discrimination against gays and lesbians in this country, there is now an "emerging recognition", *Lawrence*, *supra*, 539 U.S. at 572, that such discrimination is fundamentally incompatible with the 14th Amendment's guarantee of equal protection of the laws. The State Defendants-Appellants' asserted rationales for the MMA have *all* been rejected by every post-*Windsor* court to consider them; they do not satisfy even rational basis scrutiny. As Judge Friedman aptly put it, our law is based on "the enduring principle that

11

regardless of whoever finds favor in the eyes of the most recent majority, the guarantee of equal protection must prevail" (R: 151, Findings of Fact and Conclusions of Law at p 30 (Pg ID 3973)).

18.    For all of these reasons, the State Defendants-Appellants have not established and cannot establish a likelihood of success on the merits of their appeal.

*(ii) & (iii) Irreparable harm and balance of harms.*

19.    The State Defendants-Appellants' claim of irreparable harm if no stay is granted is also entirely lacking in merit; to the contrary, it is the Plaintiffs-Appellees and all other similarly situated families who would suffer palpable, irreparable harm if a stay were to be granted.  The suggestion that the state is irreparably injured when a law is enjoined begs the question; if a law is unconstitutional, the state has no legal right to enforce it, period.  Moreover, "[i]n making this argument, ... the State ignores the largely abstract nature of the harm it alleges, which pales in comparison to the concrete harm caused to plaintiffs by their current ineligibility for many federal marital benefits," *Garden State Equality v. Dow*, 79 A.3d 479, 481 (2013), and the adult Plaintiffs-Appellees' inability to provide adequate legal protection for their children.  The State of Michigan suffers no harm whatever if same-sex couples are permitted to marry; couples like the adult Plaintiffs-Appellees and their children suffer real, demonstrable harm in their everyday lives each day the adult Plaintiffs-

12

Appellees are denied their right to marry and adopt each other's children. On the facts of this case, in which the Plaintiff-Appellee children remain particularly vulnerable each day that they are deprived of the right to two legal parents, it is more than a truism that the loss of a constitutional right "even for minimal periods of time, unquestionably constitutes irreparable injury". *Connection Distributing Co. v. Reno*, 154 F.3d 281, 288 (6th Cir 1998), citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion); *Newsom v. Harris*, 888 F. 2nd 371, 378 (6th Cir 1989) (same).

19. For these reasons, the State Defendants-Appellants cannot establish irreparable harm to the state's interests from denial of a stay, and Plaintiffs-Appellees and all others similarly situated will continue to suffer serious, irreparable harm if a stay were to be granted.

### *(iv) The public interest.*

20. The public interest is best met by denying a stay in this matter. There are times when maintaining the status quo makes sense. There are also times when maintaining the status quo is merely a kinder label for perpetuating discrimination that should no longer be tolerated. The public interest in this case lies on the side of ending discrimination, promoting equality and human dignity and providing security for children, especially these adult Plaintiffs-Appellees' special needs children.

21. Throughout the litigation of this case, the State Defendants-Appellants

have attempted to portray the case as a scientific experiment, as if the question were whether there should be same-sex couples and families, effectively treating Plaintiffs-Appellees and all of the other Michigan same-sex families as if they don't exist or don't count.  Plaintiffs-Appellees exist, they will continue to exist, and they count. As Judge Friedman stressed in the concluding paragraph of his opinion:

> In attempting to define this case as a challenge to "the will of the people," ... state defendants lost sight of what this case is truly about: people.  No court record of this proceeding could ever fully convey the personal sacrifice of these two plaintiffs who seek to ensure that the state may no longer impair the rights of their children and the thousands of others now being raised by same-sex couples.

(R: 151, Findings of Fact and Conclusions of Law at p 30, Pg ID 3973).

22.  Permitting loving same-sex couples to marry pending the outcome of this appeal will not harm the state in any way; permitting the children of loving same-sex couples to have two legally recognized parents will not harm the state in any way; permitting the children of loving same-sex couples to have two legally recognized parents will better protect these children and will keep the state from continuing to "impair the rights of" these children.

23.  The State Defendants-Appellants' argument that if a stay is not granted, "marriage licenses would be issued under a cloud of uncertainty" is false:

- With the MMA having been held by the district court to be

14

unconstitutional, and in the absence of a stay, there is no valid reason whatever to question the authority of county clerks to issue marriage licenses to otherwise qualified same-sex couples and for those couples to have wed prior to the entry of this Court's order granting a temporary stay; and

• Michigan law is clear that even if the officiant at a wedding in fact lacked the authority to marry a couple, the validity of the marriage is not affected so long as at least one of the individuals married believed in good faith that the marriage was lawful:

> A marriage solemnized before an individual professing to be a district judge, common pleas court judge, district court magistrate, municipal judge, judge of probate, judge of a federal court, mayor, the county clerk or, in a county having more than 2,000,000 inhabitants, an employee of the county clerk designated by the clerk to solemnize marriages, or a minister of the gospel or cleric or religious practitioner shall not be considered or adjudged to be void, nor shall the validity of the marriage be affected, on account of a want of jurisdiction or authority by that individual if the marriage was consummated with a full belief on the part of the individuals married, or either of them, that they were lawfully joined in marriage.

M.C.L.A. §551.16.

24.  It is not in the public interest that, if a stay were to be granted, convicted felons who might never be able to live with their spouse would still be able to marry, *cf. Turner v. Safley*, 482 U.S. 78, 95 (1987), while loving same-sex couples raising

children would not.

25.  For myriad obvious reasons, the public interest is ill-served in our highly mobile nation by a patchwork of laws in which loving couples' right to marry and their marriage-based rights depend on which state they live in.  It is very much in the immediate public interest for the law regarding eligibility to marry based on sexual orientation to become consistent from state to state.  Since the clock is not going to be turned back – the right of same-sex couples to marry in the growing number of states currently allowing it is no more going to be taken away than is the right of inter-racial couples to marry – it is also clear that the public interest is best served by promoting equality now.

26.  Finally, permitting loving same-sex couples to marry and provide full parental security for their children will also help the state's economy.  Discriminatory policies, which deter same sex couples from adopting children within Michigan's foster care system, are causing couples to adopt from other states' foster care systems, leaving children languishing in Michigan's foster care system through adolescence at great expense to the State (Sankaran, Tr 2/26/14, at pp 64-65).  Moreover, conflicting laws between states that recognize the right to same-sex marriage and those that do not create serious morale and administrative problems for employers with facilities in multiple states, which then results in reduced business influx into the

state and a "brain drain" for Michigan, with qualified gay and lesbian professionals and their supporters eschewing or leaving the state. Plaintiffs-Appellees' Trial Ex. 50, Michigan Department of Civil Rights Report on LGBT Inclusion Under Michigan Law, January 28, 2013, at pp 74-82.[3]

24. For all of these reasons, the public interest, too, is best served by denying the motion.

WHEREFORE, Plaintiffs-Appellees pray this Court for an Order denying the State Defendants-Appellants' emergency motion for a stay pending appeal.

Respectfully submitted,


s/Carole M. Stanyar                                    s/ Kenneth M. Mogill
CAROLE M. STANYAR P34830                   Kenneth M. Mogill P17865
221 N. Main Street, Suite 300                       MOGILL, POSNER & COHEN
Ann Arbor, MI 48104                                     27 E. Flint St., 2nd Floor
(313) 819-3953                                             Lake Orion MI 48362
cstanyar@wowway.com                                (248)814-9470
                                                               kmogill@bignet.net


s/Dana M. Nessel
DANA M. NESSEL P51346

_____

[3]Available at http://www.michigan.gov/documents/mdcr_Report_on_ LGBT_ Inclusion_409727_7.pdf. See specifically at p 81: ("Just as people do not want to work in discriminatory environments, people do not want to live in places where they are treated unjustly. The most recurrent theme the Department heard when soliciting testimony related to the economic impact of discrimination involved somebody reluctantly moving out of state to a place where they feel more safe, appreciated, and accepted.").

645 Griswold, Suite 4300
Detroit MI 48226
(313)556-2300
dananessel@hotmail.com

Attorneys for Plaintiffs-Appellees

*s/Robert A. Sedler*
ROBERT A. SEDLER     P31003
Wayne State University Law School
471 W. Palmer Street
Detroit, MI 48202
(313) 577-3968
rsedler@wayne.edu

Of Counsel for Plaintiffs-Appellees

Dated: March 25, 2014