No. 14-1341

IN THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

APRIL DEBOER, *et al.*
*Plaintiffs-Appellees.*

v.

RICHARD SNYDER, *et al.*,
*Defendants-Appellants*

Appeal from the United States District Court
for the Eastern District of Michigan (No. 2:12-cv-10285)

BRIEF OF 57 EMPLOYERS AND ORGANIZATIONS REPRESENTING EMPLOYERS
AS *AMICI CURIAE* IN SUPPORT OF APPELLEES

June 16, 2014

Susan Baker Manning
Michael L. Whitlock
Margaret E. Sheer
Jared A. Craft
Sara Carian
John A. Polito
BINGHAM McCUTCHEN LLP
2020 K Street, N.W.
Washington, D.C. 20006
202.373.6000

Attorneys for 57 Employers and
Organizations Representing Employers as *Amici Curiae*

*This brief is filed on behalf of the following businesses and cities*:

A&R Lawn and Landscaping
Alcoa Inc.
ALR Products, d/b/a Polly Products
American International Group, Inc.
Atlas Cut Stone
CBS Corporation
Caesars Entertainment Corporation
The Comfy Cow
Core Fluency Pilates
David J. Jarrett, P.C.
eBay, Inc.
El Mundo
Empowered Law
G.A.W., Inc.
Gleason & Associates Claims Services
Google Inc.
Graphic Addictions
Growing Hope
Heine Brothers' Coffee, Inc.
Honigman Miller Schwartz & Cohn LLP
Intel Corporation
Innovative Solutions Agency, Inc.
Jazz Pharmaceuticals
Law Offices of J.L. Haddock, PLLC
Levi Strauss & Co.
Lori Karbal et al.
LNT, Inc.
Marriott International, Inc.
New York Life Insurance Company

Oracle America, Inc.
Outerwall Inc.
Pakmode Publications, LLC, d/b/a
Pakmode Media + Marketing
Paprocki LLC, dba Rock Paper Hammer
Pfizer, Inc.
Porter Automotive, Inc.
RJR Photography
RunRunRun, Inc.
Russell Immigration Law Firm
Sidetrack Bar& Grill
Spirit Dreams
Starbucks Coffee Company
SunDaily
Sun Life Financial (U.S.) Services Company, Inc.
Symantec Corporation
Third Lutheran Church
Turner Small Business Consulting, LLC
United Therapeutics Corporation
Viacom Inc.
VitaPerk
Ypsilanti Downtown Development Authority (DDA)
Ypsilanti Depot Town Community Development Corporation (CDC)
Zausumer, Kaufman, August and Caldwell, P.C.

The City of Ann Arbor, MI
The City of East Lansing, MI
The City of Lakewood, OH
The City of Dayton, OH
The City of Ypsilanti, MI

# CORPORATE DISCLOSURE STATEMENTS OF CORPORATE *AMICI*

Please see Appendix A, containing the disclosure forms for all *amici* described below, as required by Local Rule 26.1.

**A&R Lawn and Landscaping** provides landscaping services throughout metro Detroit.  It is a corporation organized under the laws of Michigan.  It does not have a parent company.  No publicly held corporation owns 10% or more of its stock.  A & R Lawn and Landscaping has employees and conducts business in Michigan.

**Alcoa Inc.** (Alcoa) is a corporation organized under the laws of the Commonwealth of Pennsylvania.  Alcoa is a global leader in lightweight metals engineering and manufacturing.  We pioneered the aluminum industry over 125 years ago, and today, our 60,000 people in 30 countries deliver value-add products made of titanium, nickel and aluminum, and produce best-in-class bauxite, alumina and primary aluminum products.  Alcoa Inc. is listed on the New York Stock Exchange, and does not have a parent corporation. As of March 31, 2014, no entity owns in excess of 10% of its shares.  Alcoa has numerous plants and employees throughout the states covered by the Sixth Circuit, including manufacturing facilities in Cleveland and Barberton, Ohio; Whitehall, Michigan, and Alcoa and Morristown, Tennessee, as well as offices in Cleveland, Ohio, Farmington  Hills, Michigan and Knoxville, Tennessee.

**ALR Products**, *d/b/a Polly Products*, manufactures recycled plastic components, park benches, furniture, trash and recycling receptacles.  It is a corporation organized under the laws of Michigan.  It does not have a parent company.  No publicly held corporation owns 10% or more of its stock.  ALR Products d/b/a Polly Products has employees and conducts business in Michigan.

**American International Group, Inc.** is a corporation organized under the laws of Delaware. It has no parent corporation, and to its knowledge, no publicly held corporation owns 10% or more of its stock.  Subsidiaries of AIG, but not AIG itself, have employees in states within the Sixth Circuit.

**Atlas Cut Stone** specializes in Natural Stone Products for business-to-business as well as business-to-consumer development and consulting for creative concepts, design and localization.  It is a corporation organized under the laws of Michigan.  It does not have a parent company.  No publicly held corporation owns 10% or more of its stock.  Atlas Cut Stone has employees and conducts business in Michigan.

**CBS Corporation** is a corporation organized under the laws of Delaware with a principal place of business in New York. National Amusements, Inc., a privately held company, directly or indirectly owns a majority of the Class A voting stock of CBS Corporation. To CBS Corporation's knowledge without inquiry, GAMCO Investors, Inc., on March 15, 2011, filed a Schedule 13D/A with the Securities and Exchange Commission reporting that it and certain affiliates (any of which may be publicly traded) owned, in the aggregate, approximately 10.1% of the Class A voting stock of CBS Corporation. CBS Corporation is not aware of any other publicly-traded corporation that owns 10 percent or more of its stock. CBS Corporation's operations in the United States span the media and entertainment industries and include the ownership of two television stations and six radio stations in Detroit, Michigan, and four radio stations in Cleveland, Ohio.

**Caesars Entertainment Corporation** is a corporation organized under the laws of Delaware. Caesars Entertainment operates fifty-one casino-entertainment resorts on three continents, including thirty-nine in the United States. Caesars does not have a parent company; its stock is listed on NASDAQ under the symbol "CZR." No publicly held corporation owns 10% or more of its stock. Caesars manages the Horseshoe Cleveland and Horseshoe Cincinnati casino resorts and the Thistledown Casino in Cleveland for Rock Ohio Ventures, LLC.

**The Comfy Cow** is a corporation organized under the laws of Kentucky. It manufactures and distributes ice cream and ice cream related products to its multiple locations throughout the Louisville area and to wholesale clients throughout the state. It has employees and owners who reside and work within the Sixth Circuit.

**Core Fluency Pilates** is a corporation organized under the laws of Kentucky. Core Fluency is a fully-equipped Pilates studio offering private and small group practice in the classical Pilates method. Core Fluency Pilates does not have a parent company. No publicly held corporation owns 10% or more of its stock. Core Fluency Pilates operates in Louisville, Kentucky.

**David J. Jarrett, P.C.** is a personal injury and insurance defense law firm. It is a professional corporation organized under the laws of Michigan. David J. Jarrett, P.C. has employees and conducts business in Michigan.

**eBay, Inc.** is a corporation organized under the laws of Delaware and headquartered in San Jose, California. Employing more than 33,000 people, it is a

global commerce platform and payments leader, connecting millions of buyers and sellers through online platforms including eBay, PayPal, and eBay Enterprise.  It has no parent corporation and no publicly-held corporation owns 10% or more of its stock.  It conducts business and employs people in the Sixth Circuit.

**El Mundo** is a Mexican Restaurant that has been serving Mexican food and beverage since 1995 in Louisville KY. It does not have a parent company.  No publicly held corporation owns 10% or more of its stock.  El Mundo has employees and conducts business in KY.

**Empowered Law** is a law firm dedicated to providing legal services to clients who share the values of positive social impact and empowerment.  Empowered Law conducts business in Michigan and Illinois.

**G.A.W., Inc.** is a manufacturer and distributor of pneumatic tools and accessories. It is a corporation organized under the laws of Michigan.  It does not have a parent company.  No publicly held corporation owns 10% or more of its stock.  G.A.W., Inc. has employees and conducts business in Michigan.

**Gleason & Associates Claims Services** provide insurance adjusting, investigative and surveillance services to insurers throughout Michigan.  It is a corporation organized under the laws of Michigan.  It does not have a parent company.  No publicly held corporation owns 10% or more of its stock.  Gleason & Associates has employees and conducts business in Michigan.

**Google Inc.** is a corporation organized under the laws of Delaware and headquartered in California, with a campus in Ann Arbor, Michigan.  Google is a global technology leader focused on improving the ways people connect with information.  Google does not have a parent corporation and no publicly held corporation owns 10% or more of its stock.

**Graphic Addictions** manufactures and sells personalized apparel and gifts.  It is a sole proprietorship.  Graphic Addictions conducts business in Michigan.

**Growing Hope** is a non-profit whose mission involves helping people improve their lives and communities through gardening and healthy food access.  Growing Hope fosters learning, improves nutrition, encourages self-reliance, and promotes positive community futures.  It is a non-profit corporation organized under the laws of Michigan.  It does not have a parent company.  Growing Hope has employees and conducts business in Michigan.

**Heine Brothers' Coffee, Inc.** is a corporation organized under the laws of Kentucky.  It roasts coffee and operates retail coffee shops in Kentucky.  It does not have a parent corporation.  It has 210 employees who reside and work within the Sixth Circuit and the company is involved in recruiting additional employees within the Sixth Circuit.

**Honigman Miller Schwartz & Cohn LLP** is a limited liability partnership under the laws of Michigan.  It is a business law firm counseling clients on complex legal issues in more than 50 areas of legal practice. Honigman Miller Schwartz and Cohn LLP does not have a parent company and no publicly held corporation owns 10% or more of its stock. It has employees who reside and work within the Sixth Circuit and the firm is involved in recruiting additional employees within the Sixth Circuit. It has employees and consultants who reside and work within the Sixth Circuit and the company is involved in recruiting additional employees within the Sixth Circuit.  Furthermore, from its base in Michigan, it serves clients throughout the Sixth Circuit.

**Intel Corporation** is a corporation organized under the laws of Delaware.  It is the world's largest semiconductor manufacturer and is also a leading manufacturer of computer, networking, and communications hardware and software products.  It does not have a parent corporation and no publicly held corporation owns 10% or more of its stock.  Intel has employees all over the world, including in Kentucky and Michigan.

**Innovative Solutions Agency, Inc.** is an independent insurance agency focused on health insurance and employee benefits.  It is a corporation organized under the laws of Michigan.  It does not have a parent company.  No publicly held corporation owns 10% or more of its stock.  Innovative Solutions has employees and conducts business in Michigan.

**Jazz Pharmaceuticals** is a corporation organized under the laws of Delaware.  It is a specialty biopharmaceutical company focused on improving patients' lives by identifying, developing and commercializing differentiated products that address unmet medical needs.  It is a wholly owned subsidiary of Jazz Pharmaceuticals plc. It routinely does business throughout the United States, including the states comprising the Sixth Circuit.

**Law Offices of J.L. Haddock, PLLC**, is a law firm specializing in family law and serving the Metro Detroit community.  It is a professional limited liability

company organized under the laws of Michigan. It does not have a parent company. No publicly held corporation owns 10% or more of its stock. Law Offices of J.L. Haddock, PLLC has employees and conducts business in Michigan.

**Levi Strauss & Co.** is a corporation organized under the laws of Delaware. Levi Strauss & Co. is one of the world's largest brand-name apparel companies and a global leader in jeanswear. Levi Strauss & Co. does not have a parent corporation and no public company owns a 10% or greater ownership interest in Levi Strauss & Co. Levi's Only Stores, Inc., a Delaware corporation and wholly-subsidiary of Levi Strauss & Co., operates retail stores in Michigan, Tennessee, and Ohio, and a distribution center in Kentucky.

**Lori Karbal et al.** is a hair and beauty supply store. It is a limited liability company organized under the laws of Michigan. It does not have a parent company. No publicly held corporation owns 10% or more of its stock. Lori Karbal has employees and conducts business in Michigan.

**LNT, Inc.** is a jewelry wholesaler. It is a corporation organized under the laws of Michigan. It does not have a parent company. No publicly held corporation owns 10% or more of its stock. LNT has employees and conducts business in Michigan.

**Marriott International, Inc.**, listed on NASDAQ under the symbol "MAR," is a leading lodging company based in Bethesda, Maryland with reported revenues of nearly $13 billion in fiscal year 2013. It operates and manages hotels and licenses vacation ownership resorts which, in total, include more than 4,000 properties in 79 countries employing approximately 330,000 people. Marriott manages or franchises approximately 315 hotels with just over 17,000 employees spread across each of the Sixth Circuit's four states. Marriott is consistently recognized as a top employer and for its superior business operations, which it conducts based on five core values: putting people first, pursuing excellence, embracing change, acting with integrity, and serving our world.

**New York Life Insurance Company** is a mutual insurance company organized under the laws of New York. It is headquartered in New York City and has over 12,000 employees across the country. New York Life does not have a parent company. As a mutual insurance company, New York Life does not have shares that are publicly traded. New York Life operates general offices in Kentucky, Michigan, Ohio and Tennessee and a large service center in Cleveland, Ohio with more than 300 employees.

**Oracle America, Inc.** is a corporation organized under the laws of Delaware. It is a wholly owned, privately held indirect subsidiary of Oracle Corporation. It is a publicly held corporation listed on The New York Stock Exchange and is a global provider of enterprise software and computer hardware products and services. It currently has employees and/or conducts business in all the states throughout the Sixth Circuit.

**Outerwall Inc.** is a corporation organized under the laws of Delaware. Outerwall Inc. is a leader in automated retail providing kiosks in grocery stores, drug stores, mass merchants, malls, and other retail locations in the United States, Canada, Puerto Rico, the United Kingdom, and Ireland. It does not have a parent corporation and no publicly held corporation owns 10% or more of its stock. It currently has employees and/or conducts business throughout the Sixth Circuit.

**Pakmode Publications, LLC**, *d/b/a Pakmode Media + Marketing*, is a sports and entertainment marketing company helping teams, artists and colleges drive revenue through traditional and digital marketing platforms. It is a limited liability company organized under the laws of Michigan. It does not have a parent company. No publicly held corporation owns 10% or more of its stock. Pakmode has employees and conducts business in Michigan.

**Paprocki LLC**, *dba Rock Paper Hammer*, is a limited liability corporation organized under the laws of Kentucky. The company provides architecture and construction services for custom residential projects. It does not have a parent company. No publicly held corporation owns 10% or more of its stock. It has employees, subcontractors, and clients who reside and work within Kentucky.

**Pfizer, Inc.** is a corporation organized under the laws of Delaware. It is headquartered in New York and has colleagues across the U.S., including the Sixth Circuit. It is engaged in the discovery, development, manufacture and sale of many of the world's best-known prescription medicines and consumer healthcare products. It has no parent corporations, and no publicly held corporation holds a 10% or greater interest in it.

**Porter Automotive, Inc.** is an automotive business that provides towing and mechanic services to the Downriver community. It is a corporation organized under the laws of Michigan. It does not have a parent company. No publicly held corporation owns 10% or more of its stock. Porter Automotive has employees and conducts business in Michigan.

**RJR Photography** is a full service photography provider.  RJR is a sole proprietorship and does business in Michigan.

**RunRunRun, Inc.** is an Internet retailer that helps to make the world a safer, cleaner place through superior design.   It is a corporation organized under the laws of Illinois.  It does not have a parent company.  No publicly held corporation owns 10% or more of its stock.  RunRunRun, Inc. has employees and conducts business in Michigan.

**Russell Immigration Law Firm** is a Limited Liability Cooperation under the laws of the Commonwealth of Kentucky.  We represent immigrants before the United States Citizenship and Immigration Service (USCIS), Immigration Courts under the U.S. Department of Justice, Board of Immigration Appeals (BIA), US District Courts (E D. KY and W.D. KY), US Court of Appeals (Sixth Circuit), Immigration and Customs Enforcement (ICE), and other administrative and appellate bodies.  We represent many of our clients before these entities which have offices or courts throughout the states of Kentucky, Tennessee and Ohio.  We have employees and clients who reside within the Sixth Circuit, including the states of Kentucky, Tennessee, Ohio and/or Michigan. We do not have a parent company.  No publically held corporation holds 10% or more of the firm's stock.

**Sidetrack Bar & Grill** is a popular restaurant located in the historic Depot Town neighborhood of Ypsilanti, Michigan.  Sidetrack, Inc., is a corporation organized under the laws of Michigan.  It does not have a parent company.  No publicly held corporation owns 10% or more of its stock.  Sidetrack, Inc. has employees and conducts business in Michigan.

**Spirit Dreams** is a retail store that specializes in unique gifts, jewelry, natural aromatherapy and body products, candles, books, music, cards, incense and art.  It is a corporation organized under the laws of Michigan.  It does not have a parent company.  No publicly held corporation owns 10% or more of its stock.  Spirit Dreams has employees and conducts business in Michigan.

**Starbucks Coffee Company** is a corporation organized under the laws of Washington. Since 1971, Starbucks Coffee Company has been committed to ethically sourcing and roasting the highest quality Arabica coffee.  Today, with stores around the globe, the company is the premier roaster and retailer of specialty coffee in the world.  It has no parent corporation and to its knowledge, no publicly held corporation owns 10% or more of its stock.

**SunDaily** is a southeastern Michigan, research based nutritional supplement manufacturer committed to producing the highest quality products using only the most effective, bioavailable ingredients like Vitamin D3.  It is a limited liability company organized under the laws of Michigan.  It does not have a parent company.  No publicly held corporation owns 10% or more of its stock.  SunDaily has employees and conducts business in Michigan.

**Sun Life Financial (U.S.) Services Company, Inc.** is a Delaware privately held corporation.  It employs approximately 2,300 employees in 42 states (including Kentucky, Michigan, Ohio, and Tennessee) who work on behalf of its affiliated life insurance companies to distribute and administer those companies' employee-benefit products in all 50 states.  Sun Life of Canada (U.S.) Holdings, Inc. is the parent corporation of Sun Life Financial (U.S.) Services Company, Inc.  Each corporation is indirectly owned 100% by Sun Life Financial Inc., a publicly held corporation.

**Symantec Corporation** is a corporation organized under the laws of Delaware.  Employing more than 20,000 people, Symantec is an information protection expert that helps people, businesses, and governments seeking the freedom to unlock the opportunities technology brings -- anytime, anywhere.  Symantec operates one of the largest global data-intelligence networks and provides leading security, backup, and availability solutions for where vital information is stored, accessed and shared.  Symantec does not have a parent company and no publicly held company owns 10% or more of its stock.  Symantec has facilities and employees in the Sixth Circuit.

**Third Lutheran Church** is a 501(c)(3) nonprofit corporation organized under the laws of Kentucky. Third Lutheran Church is a Christian congregation of the Evangelical Lutheran Church in America and is located in the Clifton neighborhood in Louisville, Kentucky. Third Lutheran Church does not have a parent company and no publicly held corporation owns 10% or more of its stock. The congregation has members and employees who reside in the Sixth Circuit and it engages in acts of faithfulness, justice, and mercy to improve the Louisville, Kentucky community.

**Turner Small Business Consulting, LLC** provides bookkeeping and business consulting services in the Louisville, Kentucky area as well as to clients in several other states. We provide monthly bookkeeping, account reconciliations, financial statement preparation and accounting software consultations. Our state of incorporation is Kentucky and we operate in Kentucky with no parent corporation or public ownership.

**United Therapeutics Corporation** is a corporation organized under the laws of Delaware. It is a biotechnology company focused on the development and commercialization of unique medicinal products worldwide. It does not have a parent corporation. As of December 31, 2013, BlackRock, Inc., a publicly-traded investment management corporation, reported that it owns 14.1% of United Therapeutics Corporation. It has employees and consultants who reside and work within the Sixth Circuit and the company is involved in recruiting additional employees within the Sixth Circuit. In addition, its medicines are prescribed by physicians and distributed to patients throughout the Sixth Circuit.

**Viacom Inc.** is a publicly-held corporation organized under the laws of Delaware and headquartered in New York, New York. The company is home to premier entertainment brands offering content across television, motion picture, online and mobile platforms in over 160 countries. Viacom's leading brands include MTV, VH1, CMT, Logo, BET, CENTRIC, Nickelodeon, Nick Jr., TeenNick, Nicktoons, Nick at Nite, COMEDY CENTRAL, TV Land, SPIKE, Tr3s and Paramount Pictures. It has no publicly-held parent company and no publicly-held company owns 10 percent or more of its stock. Viacom does business across the Sixth Circuit and employs residents of Tennessee, Michigan and Ohio.

**VitaPerk** is a vitamin and mineral supplement that is added to a normal cup of coffee to provide a pick-me-up with the great flavor that coffee provides. VitaPerk is a Michigan based company. It is a limited liability company organized under the laws of Michigan. It does not have a parent company. No publicly held corporation owns 10% or more of its stock. VitaPerk has employees and conducts business in Michigan.

**Ypsilanti Downtown Development Authority (DDA), Ypsilanti, MI.** The YDDA is a downtown development authority organized under the Downtown Development Authority Act 197 of 1975 (MCL 125.1651 *et seq*). Its mission is to undertake district-wide improvements that have the greatest impact in strengthening the downtown areas and attracting new business. The primary goal of the YDDA is to implement positive economic, physical, aesthetic, and community changes in each of our four districts. The YDDA has employees and supports businesses in Ypsilanti, Michigan.

**Ypsilanti Depot Town Community Development Corporation (CDC), Ypsilanti, MI** is a non-profit community development corporation that is supports local businesses and neighborhoods. The Depot Town CDC is an assumed name

of the Depot Town Association, a non-profit corporation organized under the laws of Michigan.  It does not have a parent company.  The Depot Town CDDC has employees and conducts business in Michigan.

**Zausmer, Kaufman, August and Caldwell, P.C.** is a full-service law firm in Farmington Hills, Michigan with over 35 attorneys and a full complement of legal assistants, secretaries and other staff.  It is a professional corporation organized under the laws of Michigan.  Zausmer, Kaufman, August & Caldwell, P.C. has employees and conducts business in Michigan.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENTS

INTEREST OF AMICI CURIAE .............................................................................1

SUMMARY OF THE ARGUMENT .......................................................................2

ARGUMENT ..........................................................................................................3

    A.    Our Businesses Depend on Diversity and Inclusion ...........................4

    B.    To Reap the Rewards of Diversity, We Need to Be Able to Recruit and Retain Top Talent, in Part Through Equitable and Competitive Benefits Packages ..........................................................9

        1.    Employees in Same-Sex Relationships Receive Varying Access, If Any, to the Rights, Benefits and Privileges That Different-Sex Couples Enjoy Under State and Federal Law ................................................................................12

        2.    Marriage Discrimination Drives Talented Individuals Away From the Jurisdictions in Which We Do Business ........16

    C.    Marriage Discrimination Injures Our Businesses ..............................20

        1.    The States' Bans Impose Significant Burdens on Our Employees and Our Businesses ..............................................20

        2.    The States' Bans Require Us to Uphold and Affirm Discrimination Injurious to Our Corporate Cultures ...............26

CONCLUSION .....................................................................................................29

CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

CERTIFICATE OF SERVICE

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bassett v. Snyder*,
    951 F. Supp. 2d 939 (E.D. Mich. 2013). ...........................................................15

*Bostic v. Rainey*,
    970 F. Supp. 2d 456 (E.D. Va. 2014). ...............................................................19

*Garden State Equal. v. Dow*,
    82 A.3d 336 (N.J. Super. Ct. Law Div. 2013) ...................................................12

*Geiger v. Kitzhaber*,
    6:13-CV-01834-MC, 2014 WL 2054264 (D. Or. May 19, 2014) ....................12

*Goodridge v. Dep't of Pub. Health*,
    798 N.E.2d 941 (Mass. 2003) ...........................................................................12

*Griego v. Oliver*,
    316 P.3d 865 (N.M. 2013) .................................................................................12

*Grutter v. Bollinger*,
    539 U.S. 306 (2003)..............................................................................................9

*In re Adoption of Doe*,
    719 N.E.2d 1071 (Ohio App. 9 Dist., 1998).....................................................15

*Lee v. Orr*,
    No. 13-cv-8710, 2014 WL 683680, at *2 (N.D. Ill. Feb. 21, 2014)...................12

*Perry v. Brown*,
    725 F.3d 1140 (9th Cir. 2013) ...........................................................................12

*Perry v. Schwarzenegger*,
    704 F. Supp. 2d 921 (N.D. Cal. 2010)...............................................................12

*S.J.L.S. v. T.L.S.*,
    265 S.W.3d 804 (Ct. App. Ky. 2008) ...............................................................15

*Strauss v. Horton*,
    207 P.3d 48 (Cal. 2009)......................................................................................12

*Varnum v. Brien*,
　763 N.W.2d 862 (Iowa 2009) ............................................................12

*United States v. Windsor*, 133 S. Ct. 2675 (2013)............................................*passim*

*Whitewood v. Wolf*,
　1:13-CV-1861, 2014 WL 2058105 (M.D. Pa. May 20, 2014) ..........................12

**Statutes**

1 U.S.C. § 7 ...............................................................................................3, 13

ATHENS CITY CODE § 3.11 ......................................................................7

ATHENS CITY CODE § 3.11.06 ..................................................................8

CAL. FAM. CODE § 308(b) ........................................................................12

CITY OF CLEVELAND CODE § 109.06...................................................7, 8

CITY OF CLEVELAND HEIGHTS CODE § 139.24....................................7, 8

CITY OF COLLEGEDALE BOARD OF COMMISSIONERS, RESOLUTION
　NO. 448, Sept. 2, 2013 ........................................................................7

CITY OF DAYTON CODE §§ 30.30-30.36...............................................7, 8

CITY OF LAKEWOOD ORDINANCE 33-13 .................................................8

CITY OF OBERLIN ORDINANCE 12-67 ..................................................7, 8

CODE OF THE CITY OF ANN ARBOR, tit. IX, ch. 110 ..............................7

CODE OF THE CITY OF EAST LANSING, ch. 22, art III...............................7

COQUILLE INDIAN TRIBAL CODE § 740.010 ...........................................13

COLUMBUS CITY CODE CH. 229 ...........................................................7, 8

CONN. GEN. STAT. § 46b-20...................................................................12

CUYAHOGA COUNTY ORDINANCE NO. O2011-0042 .................................8

D.C. CODE § 46-401...............................................................................12

DEL. CODE ANN., tit. 13, § 101 ................................................................12

HAW. REV. STAT. §§ 572-A through 572-E, 572-1, 572-3, 572-6, 572-13, 572B-4, 572B-9.5, 572C-2, 580-1 ...............................................12

750 ILL. COMP. STAT. §§ 5/201, 209, 212, 213.1, 220 & 75/60, 65 .......................12

KY. REV. STAT. ANN. § 199.470 (West 2005) .......................................15

LEECH LAKE BAND OF OJIBWE TRIBAL CODE, tit. 6, Ch. 2........................................13

LEXINGTON-FAYETTE URBAN COUNTY COUNCIL ORDINANCE NO. 1276-13, http://www.lexingtonky.gov/Modules/ShowDocument.aspx?documentid=25872; ..............................................................................7

LITTLE TRAVERSE BAY BANDS OF ODAWA INDIANS TRIBAL CODE §§ 13.102-13.103 (as modified by WOS 2013-003) ...............................13

MD. CODE ANN., FAM. LAW § 2-201.........................................................12

ME. REV. STAT., tit. 19-A, § 650-A ...........................................................12

MICH. PUBLIC ACT 297 (2011)..................................................................15

MINN. STAT. § 517.01 *et seq.* ..................................................................12

N.H. REV. STAT. ANN. § 457:1-a.................................................................12

N.Y. DOM. REL. LAW § 10-a ....................................................................12

OH. REV. CODE § 5747.01 ........................................................................21

OH. REV. CODE § 3107.03 ........................................................................15

POKAGON BAND OF POTAWATOMI INDIANS MARRIAGE CODE §§ 2.01, 4.01.........................................................................................13

R.I. GEN. LAWS § 15-1-1 *et seq.*...............................................................12

SUQUAMISH TRIBAL CODE, tit. 9, ch. 9.1.....................................................13

TOLEDO MUNICIPAL CODE CH. 114 ..............................................................8

VT. STAT. ANN., tit. 15, § 8 .....................................................................12

VILLAGE OF YELLOW SPRINGS CODIFIED ORDINANCES, § 632.03 .........................7, 8

WASH. REV. CODE § 26.04.010 ...............................................................................12

**Rules**

Fed. R. App. P. 29(a) ...........................................................................................1

Fed. R.  App. P. 29(c)(5) ......................................................................................1

**Other Authorities**

Nick Anderson, *Outgoing rector warns Virginia may lose professors
    because of gay marriage ban*, WASH. POST, Aug. 12, 2013 ..............................18

Paula Andruss, *How to Attract—And Retain—Staff When You Can't
    Pay Big Bucks*, ENTREPRENEUR MAGAZINE (June 27, 2012),
    http://www.entrepreneur.com/article/223516 .....................................................10

Matt Apuzzo, *More Federal Privileges to Extend to Same-Sex
    Couples*, N.Y. TIMES, Feb. 8, 2014 ....................................................................14

M.V. Lee Badgett, *et al.*, *The Business Impact of LGBT-Supportive
    Workplace Policies*, WILLIAMS INSTITUTE (May 2013),
    http://williamsinstitute.law.ucla.edu/wpcontent/uploads/Business-
    Impact-LGBT-Policies-Full-Report-May-2013.pdf ..................................6, 7, 11

BEREA CITY COUNCIL MINUTES (Feb. 14, 2013) .....................................................7

Tara Siegel Bernard, *A Progress Report on Gay Employee Health
    Benefits*, N.Y. TIMES, Dec. 5, 2012,
    http://bucks.blogs.nytimes.com/2010/12/14/a-progress-report-on-
    gay-employee-health-benefits/ ..................................................................23, 25

Janell L. Blazovich, *et. al.*, *Do Gay-friendly Corporate Policies
    Enhance Firm Performance?*(Apr. 29, 2013), http://www.west-
    info.eu/files/gayfriendly1.pdf ...............................................................6, 11, 16

Scott B. Button, *Organizational Efforts to Affirm Sexual Diversity: A
    Cross-Level Examination: A Cross-Level Examination*, 86 J. OF
    APPLIED PSYCHOL. 17 (2001) ............................................................................11

*California Native American Tribe Announces Support of Same-Sex Marriage: Santa Ysabel Tribe First in California to Make Proclamation*, WALL ST. J. June 24, 2013, http://online.wsj.com/article/PR-CO-20130624-907829.html ..........................13

*City Expands Employee Benefits to Include Domestic Partners* (Oct. 16, 2013), http://www.cityofknoxville.org/Press_Releases/Content/2013/1016.asp .................................................................................................7

Corporate Executive Board, *Diversity & Inclusion*, http://www.executiveboard.com/exbd/human-resources/corporate-leadership-council/diversity-and-inclusion/index.page .......................................5

*Councilman: Cincinnati to create domestic partner registry,* WLWT.COM (Feb. 25, 2014), http://www.wlwt.com/news/local-news/cincinnati/councilman-cincinnati-to-create-domestic-partner-registry/24660514 ...................................................................................8

Deloitte, *Only skin deep? Re-examining the business case for diversity*, DELOITTE POINT OF VIEW, 7 (Sept. 2011), http://www.deloitte.com/assets/Dcom-Australia/Local%20Assets/Documents/Services/Consulting/Human%20Capital/Diversity/Deloitte_Only_skin_deep_12_September_2011.pdf ...................................................................................5

RICHARD FLORIDA, THE RISE OF THE CREATIVE CLASS REVISITED 262 (2012) .........................................................................................22

Forbes, *Global Diversity and Inclusion: Fostering Innovation Through a Diverse Workforce*, FORBES INSIGHTS, 11 (July 2011) http://www.forbes.com/forbesinsights/innovation_diversity/............4, 5, 7

Freedom to Marry (last visited April 18, 2014), http://www.freedomtomarry.org/states/. .........................................16

Gary J. Gates, Williams Institute, UCLA School of Law, *Marriage Equality and the Creative Class* 1 (May 2009), http://williamsinstitute.law.ucla.edu/wpcontent/uploads/Gates-MA-Creative-Class-May-2009.pdf...................................17

*Governor McAuliffe Statement on* Bostic v. Rainey *Ruling* (Feb. 14, 2014), https://governor.virginia.gov/news/newsarticle?articleId= 3302 .......................................................................................................19

Hon. Eric H. Holder, Jr., U.S. Attorney Gen., *Remarks at the Human Rights Campaign Greater New York Gala* (Feb. 10, 2014), http://www.justice.gov/iso/opa/ag/speeches/2014/ag-speech-140210.html .........................................................................................14

Lu Hong & Scott E. Page, *Groups of diverse problem solvers can outperform groups of high-ability problem solvers*, 101, PROCEEDINGS OF THE NAT'L ACAD. OF SCIENCES OF THE U.S.A., 16385, Nov. 16, 2004, http://www.pnas.org/content/101/46/16385.full.pdf+html ...................................5

Human Rights Campaign, *2012 Municipal Equality Index: A Nationwide Evaluation of Municipal Law and Policy*, 5 (2012), http://www.hrc.org/files/assets/resources/MEI-2012_rev.pdf ...........................17

Human Rights Campaign, *2014 Corporate Equality Index*, 9, http://www.hrc.org/files/assets/resources/cei_2014_full_report_rev 7.pdf ..................................................................................................5

Human Rights Campaign, *Domestic Partner Benefits: Grossing Up to Offset Imputed Income Tax*, http://www.hrc.org/resources/entry/domestic-partner-benefits-grossing-up-to-offset-imputed-income-tax; .......................................................23

Marian Moser Jones, *Will Same-Sex-Marriage Rulings Lead to an LGBT Brain Drain in Some States?* CHRON. HIGHER EDUC. (June 27, 2013), http://chronicle.com/blogs/conversation/2013/06/27/willsame-sex-marriage-rulings-lead-to-an-lgbt-brain-drain-in-somestates/ .............................19

Sophia Kerby & Crosby Burns, *The Top 10 Economic Facts of Diversity in the Workplace*, CENTER FOR AMERICAN PROGRESS (July 12, 2012), http://www.americanprogress.org/issues/labor/news/2012/07/12/11 900/the-top-10-economic-facts-of-diversity-in-the-workplace/ .........................10

Cindy Leise, *Oberlin Council approves domestic partner registry,*
THE CHRONICLE, (Sep. 21, 2012),
http://chronicle.northcoastnow.com/2012/09/21/oberlin-council-
approves-domestic-partner-registry/ .................................................................8

Level Playing Field Institute, *The Corporate Leavers Survey:  The
cost of employee turnover due solely to unfairness in the
workplace,* 4 (2007),
http://www.lpfi.org/sites/default/files/corporate-leavers-survey.pdf .................11

Feng Li & Venky Nagar, *Diversity and Performance,* 59 MGMT.
SCIENCE 529 (March 2003)...............................................................5, 6, 25, 27

Ulrike Malmendier & Geoffrey Tate, *CEO overconfidence and
corporate investment*, 60 J. FIN. 2661 (2005).......................................................5

Max Messmer, *Four Keys to Improved Staff Retention*, STRATEGIC
FIN. (Oct. 2006)
http://www.imanet.org/PDFs/Public/SF/2006_10/10careers.pdf .......................10

*Mayor Fischer Signs Order, Effective July 1, 2012*, (last visited June
12, 2014), http://www.louisvilleky.gov/Mayor/News/2011/7-15-
11+partner+benefits.htm.................................................................................7

MetLife, *10th Annual Study of Employee Benefit Trends*, 20(2012),
https://www.metlife.com/retirement-plan-edge/issues/2012-
Q1/metlife-ebts.html ....................................................................................9, 10

Michael Monks, *Domestic Partner Benefits Approved for Covington,*
RIVER CITY NEWS (May 1, 2012),
http://therivercitynews.blogspot.com/2012/05/domestic-partner-
benefits-approved-for.html; ............................................................................7

Michael J. Moore, *Same Sex Marriage Rules Hamper Wall Street's
Recruiting*, WALL ST. J., Apr. 30, 2013 ............................................................17

Matt Motyl *et al*., *How Ideological Migration Geographically
Segregates Groups*, J. EXPERIMENTAL SOC. PSYCHOL.
(forthcoming), http://ssrn.com/abstract=2158461 .............................................16

Movement Advancement Project, *et al.*, *A Broken Bargain: Discrimination, Fewer Benefits and More Taxes for LGBT Workers (Full Report)*, (May 2013), http://outandequal.org/documents/brokenbargain/abroken-bargain-full-report.pdf...................................................................4, 19, 23, 25

Oh. Dep't. of Taxation, *Filing Guidelines for Taxpayers Filing a Joint Federal Income Tax Return With Someone of the Same Gender*, IT 2013-01 (Oct. 11, 2013).....................................................................21

Out & Equal, *Majority of Americans: Companies Not Government Should Decide Benefits Offered to Same-Sex Employees*, May 22, 2006, http://outandequal.org/documents/2006_Workplace_Survey 052306.pdf ...........................................................................................10

Out on the Street & Immigration Equality, *The Cost of LGBT Exclusion: How Discriminatory Immigration Laws Hurt Business* 9-10 (2013), http://www.scribd.com/doc/124021795/Thinking-Outside-the-Closet-The-Cost-of-LGBT-Exclusion#fullscreen ..........................18

Belle R. Ragins, *et al.*, *Making the Invisible Visible: Fear & Disclosure of Sexual Orientation at Work,* 92 J. OF APPLIED PSYCHOL. 1103 (2007) .......................................................................11

Oscar Raymundo, *Some Native American tribes support gay marriage,* S.F. EXAM'R., Nov. 25, 2013, http://www.sfexaminer.com/sanfrancisco/some-native-americantribes-support-gay-marriage/Content?oid=2634562 ..........................13

Joanne Sammer & Stephen Miller, *The Future of Domestic Partner Benefits*, SOC'Y FOR HUM. RES. MGMT. (Oct. 21, 2013), http://www.shrm.org/hrdisciplines/benefits/articles/pages/domestic-partner-benefits.aspx. ........................................................................21

C. Matthew Schulz, *Recruiting and retaining the best and brightest talent*, L.A. DAILY J., (Dec. 26, 2013)..............................................10

Peter K. Scott, *State Positions on Same-Sex Married Couple Filing Status Will Affect Employers*, Worldwide ERC, Feb. 3, 2014, http://www.worldwideerc.org/Blogs/MobilityLawBlog/Lists/Posts/Post.aspx?List=c020aee5%2D48ad%2D47b2%2D8295%2Da4cf7 1ba9e34&ID=192 ...............................................................................24

Todd Sears, *et al.*, *Thinking Outside the Closet*: *How Leaders Can Leverage the LGBT Talent Opportunity*, OUT ON THE STREET, 2011.............6, 27

Todd A. Solomon & Brett R. Johnson, *Walking Employees Through the Regulatory Maze Surrounding Same-Sex Domestic Partner Benefits,* PROBATE & PROPERTY 14 (March/April 2012), http://www.americanbar.org/content/dam/aba/publications/probate _property_magazine/v26/02/2012_aba_rpte_pp_v26_2_mar_apr_s olomon_johnson.authcheckdam.pdf .................................................................25

Todd A. Solomon & Brian J. Tiemann, *Issues to Consider in Providing a Tax Gross-Up for Employees Covering Same-Sex Spouses and Partners under the Employer's Medical, Dental, and Vision Plans*, 4 BLOOMBERG LAW REPORTS—EMPLOYEE BENEFITS (2011), http://www.mwe.com/info/pubs/solomon_tiemann_tax_gross-up_for_employees.pdf .......................................................................25

U.K. Gov't Equalities Office, Dep't for Bus. Innovation & Skills, *The Business Case for Equality & Diversity:  A survey of the academic literature,* BIS OCCASIONAL PAPER, No. 4, 27 (Jan. 2013), https://www.gov.uk/government/uploads/system/uploads/attachme nt_data/file/49638/the_business_case_for_equality_and_diversity. pdf ..............................................................................................27, 28

U.S. Bureau of Labor Statistics, *Employee Benefits in the United States—March 2013,* (July 17, 2013), http://www.bls.gov/news.release/ebs2.nr0.htm .................................................9

U.S. Gen. Accounting Office, GAO-04-353R, *Defense of Marriage Act: Update to Prior Report*, Jan. 23, 2004, http://www.gao.gov/assets/100/92441.pdf .......................................................15

U.S. Office of Pers. Mgmt., *Grossing Up Awards, Why and Why Not*, http://www.opm.gov/policy-data-oversight/performance-management/performance-management-cycle/rewarding/grossing-up-awards/................................................................................................24

# INTEREST OF *AMICI CURIAE*[1]

This brief is submitted with the consent of all parties pursuant to Federal Rule of Appellate Procedure 29(a).

*Amici* are include technology, materials, financial services, pharmaceutical, apparel, and entertainment companies; hoteliers and restaurateurs, photographers, attorneys, service providers, consultants, designers, non-profits, and municipalities, ranging from sole proprietorships to Fortune 500 members, all of whom share a desire to attract and retain a talented workforce. We are located in, do business in, or are actively preparing to begin operations in Kentucky, Michigan, Ohio, and/or Tennessee, all of which prohibit marriages between couples of the same sex and refuse to recognize existing same-sex marriages.

State laws and constitutions deyning marriage to gay and lesbian citizens are bad for our businesses. *Amici* are forced to bear unnecessary costs, complexity, and risk in managing our companies, and we are hampered in our efforts to recruit and retain the most talented workforce possible, placing us at a competitive disadvantage. Our success depends upon the welfare and morale of all employees, without distinction. The burden—imposed by state law—of having to administer complicated schemes designed to account for differential treatment of similarly

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(c)(5), *amici* certify that no party's counsel authored this brief in whole or in part, no party or party's counsel contributed money intended to fund preparing or submitting this brief, and no person contributed money intended to fund, prepare, or submit this brief.

situated employees interferes with our business and creates unnecessary confusion, tension, and ultimately, diminished employee morale. We write to advise the Court of the impact on employers of the disparate treatment mandated by states that refuse to permit or recognize marriages between same-sex couples.

## SUMMARY OF THE ARGUMENT

As employers in a national and global economy, it is critical that we attract and retain the best employee talent. States like Kentucky, Michigan, Ohio, and Tennessee, whose laws or constitutions prohibit same-sex couples from marrying, require us to differentiate among similarly situated employees to our detriment. As a result, our ability to grow and maintain a diverse workplace is hampered, as is our ability to grow and maintain our business. We find ourselves forced to implement policies inconsistent with our stated corporate principles. We must operate in a complicated landscape of laws and human resources regulations that increases our administrative costs and, in the end, harms our businesses.

Same-sex couples should have the same right to marry as opposite-sex couples. Married same-sex couples should receive the same benefits and responsibilities appurtenant to marriage as any other couple. We recognize the importance of that equality to our employees, and we have seen the real world, positive impact that fostering diversity and inclusion has on our productivity and performance, just as we have seen the harm that denial of equality causes our

businesses. The district court opinion in the above-captioned proceeding helps establish a uniform principle that all couples share in the right to marry. Reversal of these opinions would serve only to prolong an unproductive, inequitable, and unjust *status quo*. We respectfully and strongly urge the Court to affirm.

## ARGUMENT

On June 26, 2013, the Supreme Court held unconstitutional Section 3 of the Defense of Marriage Act of 1996 ("DOMA"), because it defined the word "marriage" to mean "only a legal union between one man and one woman," and restricted the word "spouse" to mean "only a person of the opposite sex who is a husband or a wife."[2] The Court noted that some jurisdictions had determined same-sex couples should have "the right to marry and so live with pride in themselves and their union and in a status of equality with all other married persons."[3]

As employers, we know operating in today's fractured landscape of conflicting state laws on marriage stunts our economic growth and innovation by forcing us to work harder and invest more to achieve the same return on our investment. Inconsistent laws defining marriage force us to divert significant time and cost to complex administrative systems and create a rift in the employer-employee relationship. Allowing same-sex couples to marry is better for our

---

[2] *United States v. Windsor*, 133 S. Ct. 2675, 2683 (2013) (invalidating 1 U.S.C. § 7).

[3] *Id.* at 2689.

employees because it provides them with an unambiguous, clear status under the law. That recognition is better for our business operations as well, because it improves employee morale and productivity, reduces uncertainty and risk, and removes significant administrative burdens.

### A. Our Businesses Depend on Diversity and Inclusion.

"Today, diversity and inclusion . . . are a given."[4] They are among our core principles—and we have confirmed their value through observation and rigorous analysis. We, and many of our peers, recognize that diversity is crucial to innovation and marketplace success. Members of the lesbian, gay, bisexual, and transgender ("LGBT") community are one source of that diversity.[5] An April 2013 Small Business Majority survey reported that sixty-nine percent of small business owners support non-discrimination laws protecting LGBT workers.[6] As of 2014, ninety-one percent of Fortune 500 companies provide non-discrimination

---

[4] *See, e.g.*, Forbes, *Global Diversity and Inclusion:  Fostering Innovation Through a Diverse Workforce*, FORBES INSIGHTS, 11 (July 2011) (hereinafter "Forbes Insights"), http://www.forbes.com/forbesinsights/innovation_diversity/ (a comprehensive study of 300 senior diversity at companies worldwide with revenues of at least $500 million).

[5] *Id.* at 5.

[6] Movement Advancement Project, *et al.*, *A Broken Bargain:  Discrimination, Fewer Benefits and More Taxes for LGBT Workers (Full Report),* ii (May 2013) (hereinafter "*Broken Bargain*"), http://outandequal.org/documents/brokenbargain/a-broken-bargain-full-report.pdf.

protection for their LGBT employees, and sixty-seven percent offer benefits to

same-sex partners.[7]

    We invest time and resources to implementing these principles because they

yield tangible results. A diverse, inclusive workplace environment "increases the

total human energy available to the organization. People can bring far more of

themselves to their jobs because they are required to suppress far less."[8] Inclusive

companies are more open to new ideas and opportunities, while reducing

overconfidence regarding approaching challenges.[9] Companies that are diverse and

inclusive obtain better profits and other outputs, thanks to improved team

collaboration and commitment.[10] By contrast, "corporate cultures that don't

---

    [7] Human Rights Campaign, *2014 Corporate Equality Index*, 9,
http://www.hrc.org/files/assets/resources/cei_2014_full_report_rev7.pdf

    [8] Deloitte, *Only skin deep? Re-examining the business case for diversity*,
DELOITTE POINT OF VIEW, 7 (Sept. 2011), http://www.deloitte.com/assets/Dcom-
Australia/Local%20Assets/Documents/Services/Consulting/Human%20Capital/Di
versity/Deloitte_Only_skin_deep_12_September_2011.pdf (quoting FREDERICK A.
MILLER & JUDITH H. KATZ, THE INCLUSION BREAKTHROUGH (2002)).

    [9] Feng Li & Venky Nagar, *Diversity and Performance*, 59 MGMT. SCIENCE 529,
529 (March 2003); Ulrike Malmendier & Geoffrey Tate, *CEO overconfidence and
corporate investment*, 60 J. FIN. 2661 (2005); Lu Hong & Scott E. Page, *Groups of
diverse problem solvers can outperform groups of high-ability problem solvers*,
101 PROCEEDINGS OF THE NAT'L ACAD. OF SCIENCES OF THE U.S.A., 16385, Nov.
16, 2004, http://www.pnas.org/content/101/46/16385.full.pdf+html.

    [10] *See* Corporate Executive Board, *Diversity & Inclusion*,
http://www.executiveboard.com/exbd/human-resources/corporate-leadership-
council/diversity-and-inclusion/index.page (workforces with high diversity and
inclusion show marked improvement in team collaboration and commitment). For
examples, see Forbes Insights, *supra* n.4, at 5.

encourage openness and inclusiveness leave employees feeling isolated and fearful[,]" and lose marketing potential in reaching out to LGBT consumers.[11]

The Williams Institute at the UCLA School of Law recently reviewed thirty-six research studies and found that working in an LGBT-supportive workplace climate resulted in "greater job commitment, improved workplace relationships, increased job satisfaction, improved health outcomes, and increased productivity" among LGBT employees.[12] A 2013 study of 300 firms that adopted same-sex domestic partnership benefits between 1995 and 2008 showed a ten percent stock price increase over the sample period, a performance better than ninety-five percent of all U.S. professional mutual funds, as well as "significant improvement in operating performance" relative to companies that did not adopt such policies.[13]

---

[11] Todd Sears, *et al*, *Thinking Outside the Closet*: *How Leaders Can Leverage the LGBT Talent Opportunity*, 6, OUT ON THE STREET (2011).

[12] M.V. Lee Badgett, *et al.*, *The Business Impact of LGBT-Supportive Workplace Policies*, 1, WILLIAMS INSTITUTE, May 2013 (hereinafter "Williams Institute"), http://williamsinstitute.law.ucla.edu/wp-content/uploads/Business-Impact-LGBT-Policies-Full-Report-May-2013.pdf.

[13] Li & Nagar, *supra* n.9, at 529, 538-541; *see also* Williams Institute, *supra* n.12, at 23 ("A . . . study found that the more robust a company's LGBT-friendly policies, the better its stock performed over the course of four years (2002-2006), compared to other companies in the same industry over the same period of time."); Janell Blazovich, *et al.*, *Do Gay-friendly Corporate Policies Enhance Firm Performance?* 35-36 (Apr. 29, 2013), http://www.west-info.eu/files/gayfriendly1.pdf ("[F]irms with gay-friendly policies benefit on key factors of financial performance, which . . . increase the investor perception of the firm as proxied by stock-price movements.").

Diverse workforces also help capture new clients.[14]  A 2011 study found that sixty-eight local governments require that their contractors have LGBT-supportive affirmative action policies, or policies granting same-sex partners equal benefits.[15] Despite the statewide prohibition of same-sex marriages, various cities and counties in Kentucky,[16] Michigan,[17] Tennessee,[18] and Ohio [19] provide benefits to

---

[14] Forbes Insights, *supra* n.4, at 11.

[15] Williams Institute, *supra* n.12, at 21. California has similar state-wide requirements. *Id.* (citing CAL. PUB. CONT. CODE §§ 10295.3(a)(1), (e)(1)).

[16] Berea and Covington, as well as Lexington-Fayette Urban County Government, and Louisville-Jefferson County Metro Government provide benefits for same-sex domestic partners. BEREA CITY COUNCIL MINUTES (Feb. 14, 2013); Michael Monks, *Domestic Partner Benefits Approved for Covington*, THE RIVER CITY NEWS, May 1, 2012, http://therivercitynews.blogspot.com/2012/05/domestic-partner-benefits-approved-for.html; LEXINGTON-FAYETTE URBAN COUNTY COUNCIL ORDINANCE NO. 1276-13 (Nov. 21, 2013), http://www.lexingtonky.gov/Modules/ShowDocument.aspx?documentid=25872; *Mayor Fischer Signs Order, Effective July 1, 2012* (Jul. 15, 2011), http://www.louisvilleky.gov/Mayor/News/2011/7-15-11+partner+benefits.htm.

[17] Ann Arbor and Lansing provide domestic partnership registries. CODE OF THE CITY OF ANN ARBOR, tit. IX, ch. 110; CODE OF THE CITY OF EAST LANSING, ch. 22, art III. Michigan currently bars most public employers from offering benefits to same-sex spouses or domestic partners. *See infra,* n.40.

[18] Collegedale and Knoxville provide domestic partner benefits. CITY OF COLLEGEDALE BOARD OF COMMISSIONERS, RESOLUTION NO. 448, Sept. 2, 2013; *City Expands Employee Benefits to Include Domestic Partners* (Oct. 16, 2013), http://www.cityofknoxville.org/Press_Releases/Content/2013/1016.asp.

[19] A number of cities provide domestic partnership registries. *See, e.g.,* ATHENS CITY CODE § 3.11; CITY OF CLEVELAND CODE § 109.06; CITY OF CLEVELAND HEIGHTS CODE § 139.24, http://www.heightsfamilies.org/background/benefitsord.html; COLUMBUS CITY CODE CH. 229; CITY OF DAYTON CODE §§ 30.30-30.36; CITY OF OBERLIN ORDINANCE 12-67; VILLAGE OF YELLOW SPRINGS CODIFIED ORDINANCES,

same-sex domestic partners or have established domestic partnership registries. In some jurisdictions, these registries are symbolic, and do not afford domestic partners particular status or benefits under county, state, or federal law.[20] In others, however, registration confers benefits to domestic partners.[21]

Our corporate principles are the right thing to do. Beyond that, they contribute to employee happiness and loyalty, greater company productivity and, ultimately, significant returns for our shareholders and owners.

---

§ 632.03; TOLEDO MUNICIPAL CODE CH. 114. Cincinnati is also creating a domestic partnership registry. *Councilman: Cincinnati to create domestic partner registry*, WLWT.COM (Feb. 25, 2014) http://www.wlwt.com/news/local-news/cincinnati/councilman-cincinnati-to-create-domestic-partner-registry/24660514. Lakewood and Cuyahoga County provide benefits but do not have registries. CITY OF LAKEWOOD ORDINANCE 33-13, (amending CODIFIED ORDINANCES OF THE CITY OF LAKEWOOD § 149.14); CUYAHOGA COUNTY ORDINANCE NO. O2011-0042. Oberlin City Schools have offered domestic partner benefits since at least 1997. *See* Cindy Leise, *Oberlin Council approves domestic partner registry*, THE CHRONICLE-TELEGRAM, Sept. 21, 2012, http://chronicle.northcoastnow.com/2012/09/21/oberlin-council-approves-domestic-partner-registry/.

[20] *See, e.g.,* ATHENS CITY CODE § 3.11.06; CITY OF CLEVELAND CODE § 109.06; COLUMBUS CITY CODE CH. 229; CITY OF DAYTON CODE §§ 30.30-30.36; CITY OF OBERLIN ORDINANCE 12-67; TOLEDO MUNICIPAL CODE Ch 114; VILLAGE OF YELLOW SPRINGS CODIFIED ORDINANCES, Ch. 632 (all *supra* n.19). Some cities have explicitly stated that they enacted their registries to help domestic partners qualify for employer-provided benefits. *See, e.g., supra,* CITY OF DAYTON, CITY OF OBERLIN, TOLEDO MUNICIPAL CODE.

[21] *See, e.g., supra* n.19, CITY OF CLEVELAND HEIGHTS CODE § 139.24.

**B.     To Reap the Rewards of Diversity, We Need to Be Able to Recruit and Retain Top Talent, in Part Through Equitable and Competitive Benefits Packages.**

In order to develop and grow a diverse organization, we must be able recruit and retain the best talent.[22] We hire and promote our employees based on ability. In the long run, discrimination impairs our ability to compete for the best workforce. Benefits are critical to our effort to compete for talent, as benefits directly contribute to recruitment and employee loyalty.[23] In 2012, eighty-six percent of full-time American workers in private industry received medical benefits through their employer, and seventy-four percent had an employer-provided retirement plan.[24] Benefits packages—especially health-care and retirement benefits—can add thirty percent or more to compensation value on top of an employee's salary. In a 2011 Harvard Business Review survey, sixty percent of human resources leaders stated that an attractive benefits package was "very important" in recruiting and

---

[22] "[T]he skills needed in today's increasingly global *marketplace* can only be developed through exposure to widely diverse people, cultures, ideas, and viewpoints." *Grutter v. Bollinger*, 539 U.S. 306, 330 (2003).

[23] MetLife, *10th Annual Study of Employee Benefit Trends*, 20 (2012), http://www.metlife.com/assets/institutional/services/ insights-and-tools/ebts/ml-10-Annual-EBTS.pdf (60% of employees felt benefits were an important reason for remaining with the company).

[24] U.S. Bureau of Labor Statistics, *Employee Benefits in the United States— March 2013,* (July 17, 2013), http://www.bls.gov/news.release/ebs2.nr0.htm.

retaining quality employees.[25] In 2006, eighty-nine percent of LGBT respondents found it important to work for a company with a written nondiscrimination policy that includes sexual orientation, and ninety-one percent said equal benefits were crucial.[26] Through such plans, we foster a positive employer/employee relationship and retain satisfied and engaged workers, who in turn are more productive and perform better than less-satisfied colleagues.[27]

We also know we must offer workplace benefits equitably, particularly in a diverse workforce, because employees who are treated differently are more likely to leave as a result of perceived discrimination. These departures "result[] in avoidable turnover-related costs at the expense of a company's profits."[28] In 2007,

---

[25] Paula Andruss, *How to Attract—And Retain—Staff When You Can't Pay Big Bucks*, ENTREPRENEUR MAGAZINE, June 27, 2012, http://www.entrepreneur.com/article/223516 (compared with 38% who believed only high base salary was "very important"); Max Messmer, *Four Keys to Improved Staff Retention*, STRATEGIC FIN. (Oct. 2006) http://www.imanet.org/PDFs/Public/SF/2006_10/10careers.pdf ("A 2005 [Zogby International] survey . . . revealed that [58%] of employees polled would prefer a job with excellent benefits over one with a higher salary.").

[26] Out & Equal, *Majority of Americans: Companies Not Government Should Decide Benefits Offered to Same-Sex Employees*, May 22, 2006, http://outandequal.org/documents/2006_Workplace_Survey052306.pdf.

[27] MetLife, *supra* n.23, at 20; *see generally* Andruss, *supra* n.25; Messmer, *supra* n.25; C. Matthew Schulz, *Recruiting and retaining the best and brightest talent*, L.A. DAILY J., Dec. 26, 2013.

[28] Sophia Kerby & Crosby Burns, *The Top 10 Economic Facts of Diversity in the Workplace*, Center for America Progress, July 12, 2012, http://www.americanprogress.org/issues/labor/news/2012/07/12/11900/the-top-10-

a national survey of people who had quit or been laid off since 2002 reported that "[g]ay and lesbian professionals and managers said workplace unfairness was the only reason they left their employer almost twice as often as heterosexual Caucasian men."[29] Of those gay and lesbian professionals who left, "almost half . . . said that if their employer offered more or better benefits they would have very likely stayed at their job."[30] LGBT equality also matters to heterosexual employees. In the same 2006 poll, seventy-two percent of non-LGBT respondents found it important that an employer offer equal benefits to LGBT co-workers.[31]

The mandate in Kentucky, Michigan, Ohio, and Tennessee requires that, when dealing with state marital benefits, we single out colleagues with same-sex partners and treat them as a separate and unequal class as compared to employees

---

economic-facts-of-diversity-in-the-workplace/; *see also* Blazovich, *supra* n.13, at 8-9.

[29] Level Playing Field Institute, *The Corporate Leavers Survey: The cost of employee turnover due solely to unfairness in the workplace*, 4 (2007), http://www.lpfi.org/sites/default/files/corporate-leavers-survey.pdf.

[30] *Id.* at Executive Summary; *see also* Williams Institute, *supra* n.12, at 17 ( "respondents who perceived more workplace discrimination reported significantly lower levels of job commitment and significantly higher levels of turnover intentions. [Other studies] found a similar relationship between discrimination and job commitment or turnover intentions."); Belle R. Ragins, *et al.*, *Making the Invisible Visible: Fear & Disclosure of Sexual Orientation at Work*, 92 J. OF APPLIED PSYCHOL. 1103 (2007); Scott B. Button, *Organizational Efforts to Affirm Sexual Diversity: A Cross-Level Examination*, 86 J. OF APPLIED PSYCHOL. 17 (2001).

[31] Level Playing Field Institute, *supra* n. 29, at Executive Summary.

with heterosexual partners. This mandate upsets our business philosophy and prevents our companies from reaching our full economic potential because it dissuades employees from living and working in the jurisdictions where we do, or want to do, business.

> **1.    Employees in Same-Sex Relationships Receive Varying Access, If Any, to the Rights, Benefits and Privileges That Different-Sex Couples Enjoy Under State and Federal Law.**

Nineteen states; Washington, D.C.; and eight federally recognized Indian tribes recognize the right of individuals to marry regardless of their partner's sex.[32]

---

[32] Marriages between same-sex couples are licensed by California, Connecticut, Delaware, Hawaii, Illinois, Iowa, Maine, Maryland, Massachusetts, Minnesota, New Hampshire, New Jersey, New Mexico, New York, Oregon, Pennsylvania, Rhode Island, Vermont, Washington, the District of Columbia, the Cheyenne and Arapaho Tribes of Oklahoma, the Coquille Tribe, the Confederated Tribes of the Colville Nation, Iipay Nation of Santa Ysabel, the Leech Lake Band of Ojibwe, the Little Traverse Bay Bands of Odawa Indians, the Pokagon Band of Potawatomi Indians, and the Suquamish Tribe. *See Perry v. Schwarzenegger*, 704 F. Supp. 2d 921, 1003 (N.D. Cal. 2010), *appeal dismissed sub. nom. Perry v. Brown*, 725 F.3d 1140 (9th Cir. 2013); *Strauss v. Horton*, 207 P.3d 48, 68, 119 (Cal. 2009); CAL. FAM. CODE § 308(b); CONN. GEN. STAT. § 46b-20; DEL. CODE ANN., tit. 13, § 101; HAW. REV. STAT. §§ 572-A through 572-E, 572-1, 572-3, 572-6, 572-13, 572B-4, 572B-9.5, 572C-2, 580-1; 750; ILL. COMP. STAT. §§ 5/201, 209, 212, 213.1, 220 & 75/60, 65; *Lee v. Orr*, No. 13-cv-8719, 2014 WL 683680, at *2 (N.D. Ill. Feb. 21, 2014); *Varnum v. Brien*, 763 N.W.2d 862 (Iowa 2009); ME. REV. STAT., tit. 19-A, § 650-A; MD. CODE ANN., FAM. LAW § 2-201; *Goodridge v. Dep't of Pub. Health*, 798 N.E.2d 941 (Mass. 2003); MINN. STAT. § 517.01 *et seq.*; N.H. REV. STAT. ANN. § 457:1-a; *Garden State Equal. v. Dow,* 82 A.3d 336 (N.J. Super. Ct. Law Div. 2013); *Griego v. Oliver*, 316 P.3d 865 (N.M. 2013); N.Y. DOM. REL. LAW § 10-a; R.I. GEN. LAWS § 15-1-1 *et seq.*; *Geiger v. Kitzhaber*, 6:13-CV-01834-MC, 2014 WL 2054264 (D. Or. May 19, 2014); *Whitewood v. Wolf*, 1:13-CV-1861, 2014 WL 2058105 (M.D. Pa. May 20, 2014); VT. STAT. ANN. tit. 15, § 8; WASH. REV. CODE § 26.04.010; D.C. CODE § 46-401; CHEYENNE-ARAPAHO TRIBES OF

Each such jurisdiction also recognizes the validity of same-sex marriages lawfully celebrated elsewhere.

In June 2013, the Supreme Court found DOMA Section 3 unconstitutional. As a result, the federal government now must recognize all couples "whom the State, by its marriage laws, sought to protect in personhood and dignity" as married.[33] In the absence of a controlling statute or agency guidance to the contrary, the federal government respects same-sex couples as lawfully married if their marriage was performed in a state that legally authorizes such marriages.[34]

While "marriage is more than a routine classification for purposes of certain statutory benefits,"[35] as a legal status, marriage touches numerous aspects of life, both practical and profound. Federal and state law provide the working family

---

OKLA. [LAW & ORDER CODE] § 1101; CONFEDERATED TRIBES OF THE COLVILLE RESERVATION, RES. 2013-344.l&j; COQUILLE INDIAN TRIBAL CODE § 740.010; *California Native American Tribe Announces Support of Same-Sex Marriage: Santa Ysabel Tribe First in California to Make Proclamation*, WALL ST. J., June 24, 2013, http://online.wsj.com/article/PR-CO-20130624-907829.html; LEECH LAKE BAND OF OJIBWE TRIBAL CODE, tit. 6, ch. 2 & Oscar Raymundo, *Some Native American tribes support gay marriage*, S.F. EXAM'R, Nov. 25, 2013, http://www.sfexaminer.com/sanfrancisco/some-native-americans-tribes-support-gay-marriage/Content?oid=2634562; LITTLE TRAVERSE BAY BANDS OF ODAWA INDIANS TRIBAL CODE §§ 13.102-13.103 (as modified by WOS 2013-003); POKAGON BAND OF POTAWATOMI INDIANS MARRIAGE CODE §§ 2.01, 4.01; SUQUAMISH TRIBAL CODE, tit. 9, ch. 9.1.

[33] *Windsor*, 133 S. Ct. at 2696 (invalidating 1 U.S.C. § 7).

[34] *Id.* at 2695-96.

[35] *Id.* at 2692.

many benefits and protections relating to health care, protected leave, and retirement. These provide security and support to an employee grappling with sickness, disability, childcare, family crisis, or retirement, allowing the employee to devote more focus and attention to his work. Under federal law, individuals married to same-sex spouses benefit from equal treatment regarding health insurance, military benefits, tax treatment, and immigration law.[36] The U.S. Department of Justice, for example, has announced that same-sex married couples will receive equal federal death benefit and educational payments for federal public safety officers, victim compensation payments, equal treatment in bankruptcy cases, equal rights for inmates in federal prison, and equal access to the marital privilege in federal court.[37]

However, gay and lesbians employees in committed relationships in the Sixth Circuit are categorically denied access to these rights and benefits—and to important rights and responsibilities at the state level. In Kentucky, Michigan, and Ohio, for example, single parents can adopt, but an unmarried partner's *de facto*

---

[36] *See* Hon. Eric H. Holder, Jr., U.S. Attorney Gen., *Remarks at the Human Rights Campaign Greater New York Gala* (Feb. 10, 2014) http://www.justice.gov/iso/opa/ag/speeches/2014/ag-speech-140210.html (summarizing federal rights and benefits).

[37] *Id.*; *see also* Matt Apuzzo, *More Federal Privileges to Extend to Same-Sex Couples*, N.Y. TIMES, Feb. 8, 2014, http://www.nytimes.com/2014/02/09/us/more-federal-privileges-to-extend-to-same-sex-couples.html.

co-parent cannot be a legal co-parent.[38] Only spouses, not unmarried partners, can be added as beneficiaries to state benefit programs.[39] Similarly, only legal spouses have the right to make certain medical decisions.

In states where same-sex marriage is prohibited, same-sex couples in committed relationships have no access to the myriad federal rights, benefits and privileges that depend on marriage unless they leave and are legally wed elsewhere.[40] Even then, those same couples—or legally married same-sex couples who later move to the Sixth Circuit—will still be denied access to the wide range of state benefits and mutual responsibilities available to married partners of different sexes. That bar works to the detriment of employees, and to employers that seek to recruit and retain the best human capital.

---

[38] *See* OHIO REV. CODE § 3107.03 (permitting adoption only by unmarried adult or, jointly, by husband and wife); *In re Adoption of Doe*, 719 N.E.2d 1071 (Ohio App. 9 Dist., 1998) (holding that parental rights terminate upon adoption of child by non-spousal partner.) KY. REV. STAT. ANN. § 199.470 (permitting adoption only by unmarried adult or, jointly, by husband and wife); *S.J.L.S. v. T.L.S.*, 265 S.W.3d 804 (Ct. App. Ky. 2008) (Kentucky's stepparent adoption procedures unavailable to unmarried couples).

[39] Michigan has banned state and local public employers (with limited exceptions) from offering health benefits to same-sex domestic partners. The law is being challenged in federal court. *Bassett v. Snyder*, 951 F. Supp. 2d 939 (E.D. Mich. 2013) (challenging MICH. PUBLIC ACT 297 (2011)).

[40] The U.S. Government Accountability Office identified 1,138 rights, benefits and privileges under federal law dependent on marital status. U.S. Gen. Accounting Office, GAO-04-353R, *Defense of Marriage Act: Update to Prior Report* (Jan. 23, 2004), http://www.gao.gov/assets/100/92441.pdf.

## 2.    Marriage Discrimination Drives Talented Individuals Away From the Jurisdictions in Which We Do Business.

Forty-four percent of Americans live in a jurisdiction that celebrates or recognizes marriages between people of the same sex.[41] LGBT-friendly policies offer us competitive advantages in employee recruitment and retention.[42] However, when faced with the evidence above, we can only conclude that in states that enforce marriage discrimination we operate at a disadvantage when looking to hire qualified, talented personnel. Married gay and lesbian job candidates may be reluctant to pursue job opportunities within the Sixth Circuit, where their pre-existing marriages will not be recognized, and they can expect to lose access to certain previously-enjoyed state level benefits. Single gays and lesbians may decide that the option of a future legally recognized marriage is enough to justify passing up employment opportunities in the Sixth Circuit. And heterosexual individuals may decide that states hostile to marriage equality are not states in which they want to live and work.[43]

---

[41] Freedom to Marry, *States*, available at http://www.freedomtomarry.org/states/ (last visited June 10, 2014).

[42] *See* Blazovich, *supra* n.13, at 7.

[43] *See* Matt Motyl *et al.*, *How Ideological Migration Geographically Segregates Groups*, J. EXPERIMENTAL SOC. PSYCHOL. (forthcoming), *available at* http://ssrn.com/abstract=2158461 (individuals are moving from ideologically unfriendly communities to congruent communities).

Business, industry, and intellectual leaders have confirmed that this is not merely hypothetical. Richard Florida, a leading urban studies theorist, argues that members of the "creative class—the 40 million workers, a third of the American workforce—the scientists and engineers, innovator[s] and entrepreneurs, researchers and academics, architects and designers, artists, entertainers and media types and professionals in business, management, healthcare and law" use diversity as a proxy for determining whether a city would provide a welcoming home.[44] The Williams Institute found that "creative-class" Massachusetts residents in same-sex relationships were 2.5 times more likely to have moved there in the three years after marriage equality than in the three years before.[45]

Before *Windsor*, Goldman Sachs and Citigroup reported problems with recruiting qualified talent from outside the United States, as the then-operative immigration system made it difficult for same-sex partners to immigrate to the U.S.[46] Citigroup, in particular, noted that the hurdles posed "significant costs for companies that ha[d] to move workers out of the U.S. or in lost productivity from

[44] Human Rights Campaign, *2012 Municipal Equality Index: A Nationwide Evaluation of Municipal Law and Policy* 5 (2012), http://www.hrc.org/files/assets/resources/MEI-2012_rev.pdf.

[45] Gary J. Gates, Williams Institute, UCLA School of Law, *Marriage Equality and the Creative Class* 1 (May 2009), http://williamsinstitute.law.ucla.edu/wp-content/uploads/Gates-MA-Creative-Class-May-2009.pdf.

[46] Michael J. Moore, *Same Sex Marriage Rules Hamper Wall Street's Recruiting*, WALL ST. J., Apr. 30, 2013, http://www.bloomberg.com/news/2013-04-30/same-sex-marriage-rules-hamper-wall-street-s-recruiting.html.

dealing with an employee's or partner's immigration status."[47] Similarly, a 2013 survey by the American Council on International Personnel reported that forty-two percent of responding member organizations lost potential hires due to non-recognition of same-sex marriage at the federal level; respondents also reported that they could not complete internal transfers, even at the executive level, for the same reason.[48] The same logic holds true for employee transfers and migration across states. Employees with same-sex spouses—and their employers—face similar costs and lost productivity when facing the prospect of hiring and transfers into non-recognition states.

Compare those findings to the warning from the former head of The College of William and Mary's Board of Visitors regarding Virginia's marriage ban:

> We already have lost valued gay and lesbian faculty to our competitors who do not discriminate. With changes in federal benefits soon available to legally married gay couples, we will lose more. Two able individuals told me [recently] that they are leaving for another state—one a top professor [in a science-technology field] and another a university administrator just recruited to Virginia a few years ago.[49]

---

[47] *Id.*

[48] Out on the Street & Immigration Equality, *The Cost of LGBT Exclusion:  How Discriminatory Immigration Laws Hurt Business* 9-10 (2013), http://www.scribd.com/doc/124021795/Thinking-Outside-the-Closet-The-Cost-of-LGBT-Exclusion#fullscreen.

[49] Nick Anderson, *Outgoing rector warns Virginia may lose professors because of gay marriage ban*, WASH. POST, Aug. 12, 2013,

Another professor commented, "[w]hile a desire to live full time with my spouse was the main motivator in my move from a college in Virginia to one in Maryland, the antigay legal environment in Virginia did play a role in my job change."[50] Indeed, Virginia's governor lauded a district court opinion overturning his state's ban on same-sex marriage, noting the Commonwealth needed to ensure equality "to grow [Virginia's] economy and attract the best businesses, entrepreneurs, and families."[51]

This evidence suggests that gay and lesbian employees may decide to leave marriage inequality states so that they may receive full federal and state benefits, whether they are single and wishing to marry, married out-of-state and anticipating a need for benefits, or simply motivated by the need for certainty in their own life planning. Or, facing a possible transfer to a state that does not respect his marriage, an individual may choose to part ways with an employer rather than risk the

---

http://www.washingtonpost.com/lifestyle/magazine/outgoing-rector-warns-virginia-on-gay-marriage/2013/08/12/d250d466-e956-11e2-a301-ea5a8116d211_story.html.

[50] Marian Moser Jones, *Will Same-Sex-Marriage Rulings Lead to an LGBT Brain Drain in Some States?* CHRON. HIGHER EDUC., June 27, 2013, http://chronicle.com/blogs/conversation/2013/06/27/will-same-sex-marriage-rulings-lead-to-an-lgbt-brain-drain-in-some-states/; *see also Broken Bargain*, *supra* n.6, at 67 (immediately after Michigan eliminated domestic partner benefits for public employees, college professor "started applying for jobs at universities with comprehensive domestic partnership benefits").

[51] *Governor McAuliffe Statement on* Bostic v. Rainey *Ruling* (Feb. 14, 2014), https://governor.virginia.gov/news/newsarticle?articleId=3302 (discussing 970 F. Supp. 2d 456 (E.D. Va. 2014)).

potential detrimental effects of non-recognition. Other gay and lesbian workers may seek certainty and forego employment opportunities in Sixth Circuit marriage-inequality states. After *Windsor*, planning for retirement may be more straightforward in marriage equality jurisdictions, where spouses have clearer rights to benefits.

### C.    Marriage Discrimination Injures Our Businesses.

By not permitting same-sex couples to marry, the states in the Sixth Circuit impose significant administrative burdens on our businesses, which hamper our ability to attract and retain the most qualified workforce. Although we can and often do voluntarily attempt to lessen the burden on our employees, those workarounds impose additional unnecessary business expense, inhibiting our innovation and economic growth. While we can, through this extra burden, construct reasonable facsimiles of some marital benefits, we cannot entirely ameliorate the differential treatment of employees.

### 1.    The States' Bans Impose Significant Burdens on Our Employees and Our Businesses.

For employers, the administration of benefits for employees whose marriages are not recognized by the state creates significant and unavoidable burdens that are a result of the patchwork of inconsistent state law. "In [non-recognition states], employers are still expected to impute income spent on benefits provided to a same-sex spouse for state tax purposes, but not to do so for federal

tax purposes[.]"[52] The situation is complicated further when mobile employees live, work, file taxes, and receive benefits in multiple jurisdictions.

For example, consider the discrepancy in Ohio's tax code. Although Ohio's code generally conforms to the federal tax code, which now treats same-sex couples as married as long as the marriage was recognized in the state in which it was celebrated,[53] the state's Department of Taxation recently stated that same-sex couples filing federal returns as married taxpayers must recalculate their adjusted gross income and file separately as either "single" or "head of household".[54] The employer must therefore 1) treat an employee with a same-sex spouse as unmarried for state tax purposes; 2) treat the same employee as married for federal tax purposes; and 3) monitor every such employee's state of residence and change tax treatments if the employee moves from a non-recognition state to a recognition state or vice versa. These multiple, continual, and mandatory obligations result in significant burden and expense, which is further compounded by the need to apply

---

[52] Joanne Sammer & Stephen Miller, *The Future of Domestic Partner Benefits*, SOC'Y FOR HUM. RES. MGMT. (Oct. 21, 2013), http://www.shrm.org/hrdisciplines/benefits/articles/pages/domestic-partner-benefits.aspx.

[53] OH REV. CODE § 5747.01 ("Except as otherwise expressly provided or clearly appearing from the context, any term used in this chapter that is not otherwise defined in this section has the same meaning as when used in a comparable context in the laws of the United States relating to federal income taxes[.]").")

[54] Oh. Dep't. of Taxation, *Filing Guidelines for Taxpayers Filing a Joint Federal Income Tax Return With Someone of the Same Gender*, IT 2013-01 (Oct. 11, 2013).

multiple calculations for <u>every</u> similarly situated employee in <u>every</u> non-recognition state.

Our mandated compliance with a discriminatory regime adds another dimension. Our human resources departments are the first resource for employees confused about conflicting legal rules. As a result, every benefits administrator must give advice and recommendations despite their own questions and lack of legal knowledge. Even the best-informed human resources professional can provide only a general answer. The wrong answer may lead to harsh tax and financial consequences for the employee, and further erosion of workplace morale. These concerns become even more serious given the mobile nature of today's workforce, where employees may work in several different states, where they must then file taxes and determine their eligibility for certain state benefits.[55] The administrative burden on companies required to keep up with the rapidly changing legal landscape, and to then create equitable policies and benefits, is significant.

For companies operating nationwide, many of whom have centralized HR functions, all of these variables create a complicated labyrinth of rules, regulations, and internal policies needed to accommodate a wide variety of legal standards related to tax and benefit qualifications. These accommodations must often be

---

[55] *See., e.g.,* RICHARD FLORIDA, THE RISE OF THE CREATIVE CLASS REVISITED 262 (2012) ("[S]kills and skilled people are an incredibly mobile factor of production; they flow.").

incorporated manually into otherwise automated processes, a requirement that is both burdensome and more prone to human error. The burden on small employers is likewise onerous, as they may not be capable of devoting limited resources to administering conflicting laws, let alone establishing workarounds. Benefit administration for an employee with a same-sex partner is more likely to occur in an *ad hoc*, piecemeal fashion, increasing the potential for error. Establishing marriage equality nationwide would result in a unitary system of benefits and tax treatment that can be more efficiently and equitably administered.

In an attempt to alleviate the disparities and frustrations of discriminatory benefit systems and other benefit-related matters, some employers determine that it is in their business interests to incur the cost and administrative burden of "workarounds." These employer-created benefit structures attempt to compensate for the lack of recognized relationship status, and to provide benefits for those whose marriages are recognized at the federal, but not state, level. To take one common example, many parallel benefits systems attempt to address taxability differences by providing stipends to offset the tax impact of imputed health-care benefits.[56] These and other workarounds offer many employers a way to offset the

---

[56] *See generally, Broken Bargain*, *supra* n.6, at 72-93; *see also* Human Rights Campaign, *Domestic Partner Benefits: Grossing Up to Offset Imputed Income Tax*, http://www.hrc.org/resources/entry/domestic-partner-benefits-grossing-up-to-offset-imputed-income-tax; *see also* Tara Siegel Bernard, *A Progress Report on Gay Employee Health Benefits*, N.Y. TIMES, Dec. 5, 2012,

competitive disadvantage of doing business in a marriage discrimination state, but they also impose a cost on the employer beyond the direct cost of benefits.[57]

To illustrate: after the *Windsor* decision, state-level tax decisions regarding individuals with same-sex spouses now "affect not only gross-up calculations for these employees, but also the taxability for state purposes of benefits made available to spouses of employees married to a person of the same sex."[58] Many employers will "gross up" benefit payments to individuals with a same-sex spouse to ensure that the post-tax value of any workaround is equivalent to the cash value of the benefit received by heterosexual married individuals. The U.S. Office of Personnel Management noted that this approach "raises costs considerably. . . . Under a grossing up policy, a $1,000 net cash award would actually cost the agency $1,713.80."[59] It is estimated that grossing up for an employee who incurred between $1,200 and $1,500 in extra taxes costs the employer between $2,000 and

---

http://bucks.blogs.nytimes.com/2010/12/14/a-progress-report-on-gay-employee-health-benefits/.

[57] U.S. Office of Pers. Mgmt., *Grossing Up Awards, Why and Why Not*, http://www.opm.gov/policy-data-oversight/performance-management/performance-management-cycle/rewarding/grossing-up-awards/.

[58] Peter K. Scott, *State Positions on Same-Sex Married Couple Filing Status Will Affect Employers*, Worldwide ERC (Feb. 3, 2014), http://www.worldwideerc.org/Blogs/MobilityLawBlog/Lists/Posts/Post.aspx?List=c020aee5%2D48ad%2D47b2%2D8295%2Da4cf71ba9e34&ID=192.

[59] U.S. Office of Pers. Mgmt., *supra* n.57 (using the following withholding rates: federal income tax, 28%; Medicare, 1.45%; Social Security, 6.2%; state income tax, 6%).

$2,500.[60] In other words, employers with a grossing up policy pay more to provide equivalent benefits.[61]

Grossing up is a complicated process for employers, requiring careful consideration of, *inter alia*, the appropriate tax rates, timing, coverage for dependents or a partner's children, and the impact of marital status.[62] In addition, workarounds can raise concerns about possible adverse publicity, complexity in providing and administering domestic partner benefits, and potential legal liabilities.[63] In short, workarounds themselves cause administrative burden, sometimes requiring *amici* to retain experts to craft the policies and structure systems to account for gross-up amounts, as well as to educate human resources, benefits, and payroll administrators.

---

[60] Bernard, *supra* n.56.

[61] *Broken Bargain*, *supra* n.6, at 74.

[62] For an overview of the complexities of grossing-up, *see*, *e.g.*, Todd A. Solomon & Brett R. Johnson, *Walking Employees Through the Regulatory Maze Surrounding Same-Sex Domestic Partner Benefits,* PROBATE & PROPERTY 14 (March/April 2012), http://www.americanbar.org/content/dam/aba/publications/probate_property_maga zine/v26/02/2012_aba_rpte_pp_v26_2_mar_apr_solomon_johnson.authcheckdam. pdf; Todd A. Solomon & Brian J. Tiemann, *Issues to Consider in Providing a Tax Gross-Up for Employees Covering Same-Sex Spouses and Partners under the Employer's Medical, Dental, and Vision Plans*, 4 BLOOMBERG LAW REPORTS— EMPLOYEE BENEFITS (2011), http://www.mwe.com/info/pubs/solomon_tiemann_tax_gross- up_for_employees.pdf

[63] Li & Nagar, *supra* n.9, at 531 (citing Hewitt Associates, *Benefit programs for domestic partners and same-sex spouses* (2005)).

Workarounds may attract attention from regulators or cause tension with certain shareholders or investors due to the administrative burden and incremental costs, all of which consumes time, resources and goodwill. However enlightened and necessary, such voluntary policies still perpetuate a stigma by according different treatment to those employees married out of state to a same-sex spouse or barred from such marriage by their resident state law vis-à-vis those married to a different-sex spouse. Unhelpful distinctions are inimical to teamwork and thus to the success of the entire organization.

### 2. The States' Bans Require Us to Uphold and Affirm Discrimination Injurious to Our Corporate Cultures.

The denial of marriage rights to same-sex couples in the Sixth Circuit goes against our core values and principles. As employers, we recognize the value of diversity, and we want to operate in jurisdictions that understand the need for a society that enables all married persons to "live with pride in themselves and their unions,"[64] and that support us in honoring all of our married employees.

We developed and implemented nondiscrimination policies both because they are the right thing to do, but also because these policies are crucial to our ability to recruit and retain excellent employees. In turn, the ability to hire the best human capital helps us create teams and corporate cultures that allow us to create, innovate, and ultimately increase our profits and economic value. Marriage bans

---

[64] *Windsor,* 133 S. Ct at 2689.

conscript us, as the administrators of state benefits, to become the face of a law that requires us to treat our employees in committed same-sex relationships differently from our employees married to different-sex spouses. Our need to accommodate drastically different state laws prevents us from treating all of our similarly situated employees identically, even if we attempt to do so through workarounds. Thus we become the *de facto* face of the state's discriminatory treatment, our stated policies notwithstanding.

Even "small differences in how people are treated . . . convey strong messages about the perceived relative value" of our employees.[65]

> An organization's policies toward its employees, whether an inclusive healthcare policy or a discriminatory promotion and hiring policy, send latent signals to the entire organization regarding permissible biological and behavioral attributes. Such signals may then impact all employees, affecting their comfort, their unconscious projections of identity and gender in critical interpersonal meetings.[66]

The end result is employee uncertainty, low morale, decreased productivity, and reduced profitability.

Diversity provides benefits only if it can be well-managed within the organization.[67] In 2011, an interview study presented substantial anecdotal

---

[65] Sears, *et al.*, *supra* n.11, at 6.

[66] Li & Nagar, *supra* n.9, at 543 (internal citations omitted).

[67] U.K. Gov't Equalities Office, Dep't for Bus. Innovation & Skills, *The Business Case for Equality & Diversity: A survey of the academic literature,* BIS

evidence that failure to manage diversity could lead to high turnover, loss of talented employees, litigation, and bad publicity.[68] Even if we take on the burden of developing workarounds to ameliorate disparate state treatment, we are still placed in the role of intrusive inquisitor, imputer of taxable income, and withholder of benefits. For employees who report themselves as married, we must determine the sex of their spouse and judge whether that marriage is recognized for state law purposes where the employee lives and works. We are required to place those employees "in an unstable position of being in a second-tier marriage," thereby demeaning the couple and their relationship.[69] For couples unable to marry under the laws of their state, we must perpetuate the unequal effects of those laws, "in visible and public ways."[70]

As a result, we are hampered in our ability to make our businesses as diverse and inclusive as possible, despite our stated policies and our recognized business case. We become, in short, complicit in our employees' injury—and our own.

---

OCCASIONAL PAPER, No. 4, 27 (Jan. 2013),
https://www.gov.uk/government/uploads/system/uploads/attachment_data/file/49638/the_business_case_for_equality_and_diversity.pdf.

[68] *Id.* (citing Mustafa F. Ozbilgin & Ahu Tatli, *Mapping out the field of equality and diversity: rise of individualism and voluntarism*, 64 HUM. RELATIONS 1229-1253 (2011)*,*
https://www.academia.edu/562416/Mapping_out_the_field_of_equality_and_diversity_rise_of_individualism_and_voluntarism).

[69] *Windsor,* 133 S. Ct. at 2694.

[70] *Id.* at 2695.

## CONCLUSION

Employees with partners of the same sex should be permitted to marry if they so choose, and then should be treated identically to their married heterosexual counterparts. By requiring otherwise, Kentucky, Michigan, Ohio, and Tennessee force our businesses to uphold discriminatory laws that run counter to our stated corporate values, harm our ability to attract and retain the best employees, and impose a significant burden on us. In the end, our ability to compete and to grow suffers. The decision before the Court alleviates that harm, and *amici* respectfully urge that the judgment of the United States District Court be affirmed.

Dated:  June 16, 2014                     BINGHAM McCUTCHEN LLP


                                          By: /s/ Michael L. Whitlock
                                              Susan Baker Manning
                                              Michael L. Whitlock
                                              Margaret E. Sheer
                                              Jared A. Craft
                                              Sara Carian
                                              John A. Polito
                                              2020 K Street, NW
                                              Washington, D.C. 20006
                                              202.373.6000

                                              *Attorneys for* Amici Curiae

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,881 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word version 14.0.6129.5000 (32-bit) and Times New Roman, 14-point font.

Dated:  June 16, 2014          BINGHAM McCUTCHEN LLP

                                 By: /s/ Michael L. Whitlock
                                    Michael L. Whitlock

                                  *Attorney for* Amici Curiae

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the

Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by

using the appellate CM/ECF system.  I certify that all registered attorneys in the

case are registered CM/ECF users and that service will be accomplished by the

appellate CM/ECF system.

Dated:  June 16, 2014                    BINGHAM McCUTCHEN LLP


                                         By: /s/ Michael L. Whitlock
                                             Michael L. Whitlock

                                         *Attorney for* Amici Curiae

# APPENDIX A

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 14-1341          Case Name: DeBoer, et. al. v. Snyder, et al.

Name of counsel: Susan Baker Manning

Pursuant to 6th Cir. R. 26.1, A&R Lawn and Landscaping
Name of Party
makes the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

    No.

2.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

    No.

### CERTIFICATE OF SERVICE

I certify that on _____ June 16, 2014 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Susan Baker Manning

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 14-1341                    Case Name: DeBoer, et. al. v. Snyder, et al.

Name of counsel:  Susan Baker Manning

Pursuant to 6th Cir. R. 26.1, Alcoa, Inc.
*Name of Party*

makes the following disclosure:

1.      Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> No.

2.      Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

> No.

## CERTIFICATE OF SERVICE

I certify that on _____ June 16, 2014 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Susan Baker Manning

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 14-1341                    Case Name: DeBoer, et. al. v. Snyder, et. al.

Name of counsel: Susan Baker Manning

Pursuant to 6th Cir. R. 26.1, ALR Products
                          *Name of Party*
makes the following disclosure:

1.     Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> No.

2.     Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

> No.

---

### CERTIFICATE OF SERVICE

I certify that on _____ June 16, 2014 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Susan Baker Manning

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number: 14-1341                    Case Name: DeBoer, et. al. v. Snyder, et al.

Name of counsel: Susan Baker Manning

Pursuant to 6th Cir. R. 26.1, American International Group, Inc.
                              *Name of Party*
makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the
      identity of the parent corporation or affiliate and the relationship between it and the named
      party:

> No.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest
      in the outcome?  If yes, list the identity of such corporation and the nature of the financial
      interest:

> No.

---

CERTIFICATE OF SERVICE

I certify that on _____ June 16, 2014 _____ the foregoing document was served on all
parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not,
by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Susan Baker Manning

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs,
immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number: 14-1341                    Case Name: DeBoer, et. al. v. Snyder, et al.

Name of counsel:  Susan Baker Manning

Pursuant to 6th Cir. R. 26.1, Atlas Cut Stone
                                    *Name of Party*
makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the
      identity of the parent corporation or affiliate and the relationship between it and the named
      party:

> No.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest
      in the outcome?  If yes, list the identity of such corporation and the nature of the financial
      interest:

> No.

### CERTIFICATE OF SERVICE

I certify that on _____ June 16, 2014 _____ the foregoing document was served on all
parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not,
by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Susan Baker Manning

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs,
immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 14-1341      Case Name: DeBoer, et. al. v. Snyder, et al.

Name of counsel: Susan Baker Manning

Pursuant to 6th Cir. R. 26.1, CBS Corp.

*Name of Party*

makes the following disclosure:

1. Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

National Amusements, Inc., a privately held company, directly or indirectly owns a majority of the Class A voting stock of CBS Corporation. To CBS Corporation's knowledge without inquiry, GAMCO Investors, Inc., on March 15, 2011, filed a Schedule 13D/A with the Securities and Exchange Commission reporting that it and certain affiliates (any of which may be publicly traded) owned, in the aggregate, approximately 10.1% of the Class A voting stock of CBS Corporation.

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

No.

### CERTIFICATE OF SERVICE

I certify that on _____ June 16, 2014 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Susan Baker Manning

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number: 14-1341          Case Name: DeBoer, et. al. v. Snyder, et al.

Name of counsel: Susan Baker Manning

Pursuant to 6th Cir. R. 26.1, Caesars Entertainment Corporation
Name of Party
makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the
identity of the parent corporation or affiliate and the relationship between it and the named
party:

> No.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest
in the outcome?  If yes, list the identity of such corporation and the nature of the financial
interest:

> No.

---

CERTIFICATE OF SERVICE

I certify that on _____ June 16, 2014 _____ the foregoing document was served on all
parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not,
by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Susan Baker Manning

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs,
immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 14-1341      Case Name: DeBoer, et. al. v. Snyder, et. al.

Name of counsel: Susan Baker Manning

Pursuant to 6th Cir. R. 26.1, The Comfy Cow
*Name of Party*

makes the following disclosure:

1.     Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> No.

2.     Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

> No.

---

### CERTIFICATE OF SERVICE

I certify that on      June 16, 2014      the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

     s/Susan Baker Manning

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 14-1341                    Case Name: DeBoer, et. al. v. Snyder, et al.

Name of counsel: Susan Baker Manning

Pursuant to 6th Cir. R. 26.1, Core Fluency Pilates
_Name of Party_

makes the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

    No.

2.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

    No.

---

### CERTIFICATE OF SERVICE

I certify that on _____ June 16, 2014 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Susan Baker Manning

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 14-1341                    Case Name: DeBoer, et. al. v. Snyder, et al.

Name of counsel: Susan Baker Manning

Pursuant to 6th Cir. R. 26.1, David J. Jarrett, P.C.
_____
*Name of Party*

makes the following disclosure:

1.   Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2.   Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

No.

CERTIFICATE OF SERVICE

I certify that on _____ June 16, 2014 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Susan Baker Manning

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 14-1341 _____    Case Name: DeBoer, et. al. v. Snyder, et al. _____

Name of counsel: Susan Baker Manning _____

Pursuant to 6th Cir. R. 26.1, eBay, Inc. _____
                                            *Name of Party*
makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> No.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

> No.

---

CERTIFICATE OF SERVICE

I certify that on _____ June 16, 2014 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Susan Baker Manning _____

_____

_____

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 14-1341      Case Name: DeBoer, et. al. v. Snyder, et al.

Name of counsel: Susan Baker Manning

Pursuant to 6th Cir. R. 26.1, El Mundo

*Name of Party*

makes the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> No.

2.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

> No.

---

CERTIFICATE OF SERVICE

I certify that on _____ June 16, 2014 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Susan Baker Manning

---

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

6CA-1
8/08

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 14-1341          Case Name: DeBoer, et. al. v. Snyder, et al.

Name of counsel: Susan Baker Manning

Pursuant to 6th Cir. R. 26.1, Empowered Law
                                *Name of Party*
makes the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

No.

### CERTIFICATE OF SERVICE

I certify that on _____ June 16, 2014 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Susan Baker Manning

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 14-1341            Case Name: DeBoer, et. al. v. Snyder, et al.

Name of counsel:  Susan Baker Manning

Pursuant to 6th Cir. R. 26.1, G.A.W., Inc.
                              *Name of Party*
makes the following disclosure:

1.   Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2.   Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

No.

CERTIFICATE OF SERVICE

I certify that on            June 16, 2014            the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Susan Baker Manning

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 14-1341       Case Name: DeBoer, et. al. v. Snyder, et al.

Name of counsel: Susan Baker Manning

Pursuant to 6th Cir. R. 26.1, Gleason & Associates Claims Services
*Name of Party*
makes the following disclosure:

1. Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> No.

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

> No.

---

CERTIFICATE OF SERVICE

I certify that on _____ June 16, 2014 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Susan Baker Manning

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 14-1341                    Case Name: DeBoer, et. al. v. Snyder, et al.

Name of counsel: Susan Baker Manning

Pursuant to 6th Cir. R. 26.1, Google, Inc.
*Name of Party*
makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

No.

---

CERTIFICATE OF SERVICE

I certify that on _____ June 16, 2014 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Susan Baker Manning

---

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 14-1341       Case Name: DeBoer, et. al. v. Snyder, et al.

Name of counsel: Susan Baker Manning

Pursuant to 6th Cir. R. 26.1, Graphic Addictions
*Name of Party*

makes the following disclosure:

1. Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> No.

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

> No.

---

CERTIFICATE OF SERVICE

I certify that on _____ June 16, 2014 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Susan Baker Manning

---

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 14-1341                    Case Name: DeBoer, et. al. v. Snyder, et. al.

Name of counsel:  Susan Baker Manning

Pursuant to 6th Cir. R. 26.1, Growing Hope
*Name of Party*

makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

No.

CERTIFICATE OF SERVICE

I certify that on _____ June 16, 2014 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Susan Baker Manning

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 14-1341 _____     Case Name: DeBoer, et. al. v. Snyder, et al. _____

Name of counsel: Susan Baker Manning _____

Pursuant to 6th Cir. R. 26.1, Heine Brothers' Coffee, Inc. _____
*Name of Party*

makes the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

    No.

2.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

    No.

CERTIFICATE OF SERVICE

I certify that on _____ June 16, 2014 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Susan Baker Manning _____

_____

_____

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 14-1341          Case Name: DeBoer, et. al. v. Snyder, et al.

Name of counsel: Susan Baker Manning

Pursuant to 6th Cir. R. 26.1, Honigman Miller Schwartz & Cohn LLP
*Name of Party*

makes the following disclosure:

1.     Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> No.

2.     Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

> No.

---

CERTIFICATE OF SERVICE

I certify that on _____ June 16, 2014 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Susan Baker Manning

---

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 14-1341 _____     Case Name: DeBoer, et. al. v. Snyder, et al. _____

Name of counsel: Susan Baker Manning _____

Pursuant to 6th Cir. R. 26.1, Intel Corp. _____
*Name of Party*

makes the following disclosure:

1.   Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2.   Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

No.

CERTIFICATE OF SERVICE

I certify that on _____ June 16, 2014 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Susan Baker Manning _____

_____

_____

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 14-1341                    Case Name: DeBoer, et. al. v. Snyder, et al.

Name of counsel: Susan Baker Manning

Pursuant to 6th Cir. R. 26.1, Innovative Solutions Agency, Inc.
                                        *Name of Party*
makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> No.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

> No.

### CERTIFICATE OF SERVICE

I certify that on _____ June 16, 2014 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Susan Baker Manning

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 14-1341                    Case Name: DeBoer, et. al. v. Snyder, et al.

Name of counsel: Susan Baker Manning

Pursuant to 6th Cir. R. 26.1, Jazz Pharmaceuticals
*Name of Party*
makes the following disclosure:

1.   Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

Jazz Pharmaceuticals is a wholly owned subsidiary of Jazz Pharmaceuticals plc.

2.   Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

No.

CERTIFICATE OF SERVICE

I certify that on                    June 16, 2014                    the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Susan Baker Manning

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number: 14-1341          Case Name: DeBoer, et. al. v. Snyder, et. al.

Name of counsel: Susan Baker Manning

Pursuant to 6th Cir. R. 26.1, Law Offices of J.L. Haddock, PLLC
                                *Name of Party*
makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the
      identity of the parent corporation or affiliate and the relationship between it and the named
      party:

> No.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest
      in the outcome?  If yes, list the identity of such corporation and the nature of the financial
      interest:

> No.

CERTIFICATE OF SERVICE

I certify that on _____ June 16, 2014 _____ the foregoing document was served on all
parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not,
by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Susan Baker Manning

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs,
immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 14-1341                Case Name: DeBoer, et. al. v. Snyder, et al.

Name of counsel:  Susan Baker Manning

Pursuant to 6th Cir. R. 26.1, Levi Strauss & Co.

*Name of Party*

makes the following disclosure:

1.   Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> No.

2.   Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

> No.

### CERTIFICATE OF SERVICE

I certify that on _____ June 16, 2014 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Susan Baker Manning

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 14-1341 _____    Case Name: DeBoer, et. al. v. Snyder, et al. _____

Name of counsel: Susan Baker Manning _____

Pursuant to 6th Cir. R. 26.1, Lori Karbal et al. _____
　　　　　　　　　　　　　　　　　　　*Name of Party*

makes the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

No.

### CERTIFICATE OF SERVICE

I certify that on _____ June 16, 2014 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Susan Baker Manning _____

_____

_____

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 14-1341                    Case Name: DeBoer, et. al. v. Snyder, et al.

Name of counsel: Susan Baker Manning

Pursuant to 6th Cir. R. 26.1, LNT, Inc.
                                  *Name of Party*
makes the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

    No.

2.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

    No.

---

### CERTIFICATE OF SERVICE

I certify that on _____ June 16, 2014 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Susan Baker Manning

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 14-1341            Case Name: DeBoer, et. al. v. Snyder, et al.

Name of counsel: Susan Baker Manning

Pursuant to 6th Cir. R. 26.1, Marriott International, Inc.
                              *Name of Party*
makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

No.

CERTIFICATE OF SERVICE

I certify that on _____ June 16, 2014 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Susan Baker Manning

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 14-1341          Case Name: DeBoer, et. al. v. Snyder, et. al.

Name of counsel: Susan Baker Manning

Pursuant to 6th Cir. R. 26.1, New York Life Insurance Company
Name of Party
makes the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> No.

2.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

> No.

---

CERTIFICATE OF SERVICE

I certify that on _____ June 16, 2014 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Susan Baker Manning

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 14-1341          Case Name: DeBoer, et. al. v. Snyder, et al.

Name of counsel: Susan Baker Manning

Pursuant to 6th Cir. R. 26.1, Oracle America, Inc.
*Name of Party*

makes the following disclosure:

1.      Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> Oracle America, Inc., is a wholly owned, privately held indirect subsidiary of Oracle Corporation.

2.      Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

> No.

### CERTIFICATE OF SERVICE

I certify that on _____ June 16, 2014 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Susan Baker Manning

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 14-1341          Case Name: DeBoer, et. al. v. Snyder, et. al.

Name of counsel: Susan Baker Manning

Pursuant to 6th Cir. R. 26.1, Outerwall, Inc.

*Name of Party*

makes the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

No.

CERTIFICATE OF SERVICE

I certify that on _____ June 16, 2014 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Susan Baker Manning

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 14-1341            Case Name: DeBoer, et. al. v. Snyder, et al.

Name of counsel:  Susan Baker Manning

Pursuant to 6th Cir. R. 26.1, Pakmode Publications, LLC
Name of Party
makes the following disclosure:

1.     Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> No.

2.     Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

> No.

---

### CERTIFICATE OF SERVICE

I certify that on _____ June 16, 2014 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Susan Baker Manning

_____

_____

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 14-1341          Case Name: DeBoer, et. al. v. Snyder, et. al.

Name of counsel:  Susan Baker Manning

Pursuant to 6th Cir. R. 26.1, Paprocki LLC
                              *Name of Party*
makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

No.

CERTIFICATE OF SERVICE

I certify that on _____ June 16, 2014 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Susan Baker Manning

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 14-1341              Case Name: DeBoer, et. al. v. Snyder, et al.

Name of counsel: Susan Baker Manning

Pursuant to 6th Cir. R. 26.1, Pfizer, Inc.

*Name of Party*

makes the following disclosure:

1.   Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2.   Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

No.

CERTIFICATE OF SERVICE

I certify that on _____ June 16, 2014 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Susan Baker Manning

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number: 14-1341          Case Name: DeBoer, et. al. v. Snyder, et al.

Name of counsel:  Susan Baker Manning

Pursuant to 6th Cir. R. 26.1, Porter Automotive, Inc.
_Name of Party_
makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the
       identity of the parent corporation or affiliate and the relationship between it and the named
       party:

> No.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest
       in the outcome?  If yes, list the identity of such corporation and the nature of the financial
       interest:

> No.

## CERTIFICATE OF SERVICE

I certify that on _____ June 16, 2014 _____ the foregoing document was served on all
parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not,
by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Susan Baker Manning

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs,
immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 14-1341          Case Name: DeBoer, et. al. v. Snyder, et al.

Name of counsel: Susan Baker Manning

Pursuant to 6th Cir. R. 26.1, RJR Photography
Name of Party

makes the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> No.

2.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

> No.

---

CERTIFICATE OF SERVICE

I certify that on _____ June 16, 2014 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Susan Baker Manning

---

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 14-1341          Case Name: DeBoer, et. al. v. Snyder, et al.

Name of counsel: Susan Baker Manning

Pursuant to 6th Cir. R. 26.1, RunRunRun, Inc.
*Name of Party*

makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

No.

## CERTIFICATE OF SERVICE

I certify that on _____ June 16, 2014 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Susan Baker Manning

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number: 14-1341              Case Name: DeBoer, et. al. v. Snyder, et al.

Name of counsel: Susan Baker Manning

Pursuant to 6th Cir. R. 26.1, Russell Immigration Law Firm
                              *Name of Party*
makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the
       identity of the parent corporation or affiliate and the relationship between it and the named
       party:

> No.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest
       in the outcome?  If yes, list the identity of such corporation and the nature of the financial
       interest:

> No.

---

### CERTIFICATE OF SERVICE

I certify that on _____ June 16, 2014 _____ the foregoing document was served on all
parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not,
by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Susan Baker Manning

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs,
immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number: 14-1341                    Case Name: DeBoer, et. al. v. Snyder, et al.

Name of counsel:  Susan Baker Manning

Pursuant to 6th Cir. R. 26.1, Sidetrack Bar & Grill
                                                    *Name of Party*
makes the following disclosure:

1.      Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the
        identity of the parent corporation or affiliate and the relationship between it and the named
        party:

        No.

2.      Is there a publicly owned corporation, not a party to the appeal, that has a financial interest
        in the outcome?  If yes, list the identity of such corporation and the nature of the financial
        interest:

        No.

CERTIFICATE OF SERVICE

I certify that on _____ June 16, 2014 _____ the foregoing document was served on all
parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not,
by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Susan Baker Manning

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs,
immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 14-1341          Case Name: DeBoer, et. al. v. Snyder, et al.

Name of counsel: Susan Baker Manning

Pursuant to 6th Cir. R. 26.1, Spirit Dreams
*Name of Party*
makes the following disclosure:

1. Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

No.

CERTIFICATE OF SERVICE

I certify that on _____ June 16, 2014 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Susan Baker Manning

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 14-1341          Case Name: DeBoer, et. al. v. Snyder, et al.

Name of counsel:  Susan Baker Manning

Pursuant to 6th Cir. R. 26.1, Starbucks Coffee Company
*Name of Party*

makes the following disclosure:

1.   Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2.   Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

No.

CERTIFICATE OF SERVICE

I certify that on                    June 16, 2014                    the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Susan Baker Manning

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 14-1341      Case Name: DeBoer, et. al. v. Snyder, et al.

Name of counsel: Susan Baker Manning

Pursuant to 6th Cir. R. 26.1, SunDaily

*Name of Party*

makes the following disclosure:

1. Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

No.

---

CERTIFICATE OF SERVICE

I certify that on        June 16, 2014        the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Susan Baker Manning

---

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

6CA-1
8/08

Page 1 of 2

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 14-1341          Case Name: DeBoer, et. al. v. Snyder, et. al.

Name of counsel: Susan Baker Manning

Pursuant to 6th Cir. R. 26.1, Sun Life Financial (U.S.) Services Company, Inc.
                                                    *Name of Party*
makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> Sun Life of Canada (U.S.) Holdings, Inc., is the parent corporation of Sun Life Financial (U.S.) Services Company, Inc.  Each corporation is indirectly owned 100% by Sun Life Financial, Inc., a publicly held corporation.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

> No.

---

### CERTIFICATE OF SERVICE

I certify that on _____ June 16, 2014 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Susan Baker Manning
_____
_____

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number: 14-1341                    Case Name: DeBoer, et. al. v. Snyder, et al.

Name of counsel:  Susan Baker Manning

Pursuant to 6th Cir. R. 26.1, Symantec Corporation
                                                    *Name of Party*
makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the
      identity of the parent corporation or affiliate and the relationship between it and the named
      party:

> No.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest
      in the outcome?  If yes, list the identity of such corporation and the nature of the financial
      interest:

> No.

---

CERTIFICATE OF SERVICE

I certify that on _____ June 16, 2014 _____ the foregoing document was served on all
parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not,
by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Susan Baker Manning

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs,
immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

6CA-1
8/08                                                                                        Page 1 of 2

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number: 14-1341            Case Name: DeBoer, et. al. v. Snyder, et. al.

Name of counsel: Susan Baker Manning

Pursuant to 6th Cir. R. 26.1, Third Lutheran Church
_Name of Party_

makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

No.

### CERTIFICATE OF SERVICE

I certify that on _____ June 16, 2014 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Susan Baker Manning

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 14-1341                    Case Name: DeBoer, et. al. v. Snyder, et al.

Name of counsel:  Susan Baker Manning

Pursuant to 6th Cir. R. 26.1, Turner Small Business Consulting, LLC
                                          *Name of Party*
makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> No.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

> No.

---

CERTIFICATE OF SERVICE

I certify that on _____ June 16, 2014 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Susan Baker Manning

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 14-1341_____    Case Name: DeBoer, et. al. v. Snyder, et. al._____

Name of counsel: Susan Baker Manning_____

Pursuant to 6th Cir. R. 26.1, United Therapeutics Corporation_____
*Name of Party*

makes the following disclosure:

1. Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> As of December 31, 2013, BlackRock, Inc., a publicly-traded investment management corporation, reported that it owns 14.1% of United Therapeutics Corporation.

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

> No.

## CERTIFICATE OF SERVICE

I certify that on _____June 16, 2014_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Susan Baker Manning_____

_____

_____

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: __14-1341__          Case Name: _DeBoer, et. al. v. Snyder, et al._

Name of counsel: __Susan Baker Manning__

Pursuant to 6th Cir. R. 26.1, _Viacom Inc._____

*Name of Party*

makes the following disclosure:

1.   Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> No.

2.   Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

> No.

---

### CERTIFICATE OF SERVICE

I certify that on _____June 16, 2014_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Susan Baker Manning

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 14-1341            Case Name: DeBoer, et. al. v. Snyder, et al.

Name of counsel: Susan Baker Manning

Pursuant to 6th Cir. R. 26.1, VitaPerk
*Name of Party*

makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

No.

CERTIFICATE OF SERVICE

I certify that on _____ June 16, 2014 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Susan Baker Manning

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 14-1341          Case Name: DeBoer, et. al. v. Snyder, et. al.

Name of counsel: Susan Baker Manning

Pursuant to 6th Cir. R. 26.1, Ypsilanti Downtown Development Authority (DDA)

*Name of Party*

makes the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

No.

### CERTIFICATE OF SERVICE

I certify that on _____ June 16, 2014 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Susan Baker Manning

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 14-1341          Case Name: DeBoer, et. al. v. Snyder, et al.

Name of counsel: Susan Baker Manning

Pursuant to 6th Cir. R. 26.1, Ypsilanti Depot Town Community Development Corporation
                                              *Name of Party*
makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> No.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

> No.

---

CERTIFICATE OF SERVICE

I certify that on _____ June 16, 2014 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Susan Baker Manning

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

6CA-1
8/08

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 14-1341          Case Name: DeBoer, et. al. v. Snyder, et al.

Name of counsel: Susan Baker Manning

Pursuant to 6th Cir. R. 26.1, Zausumer, Kaufman, August and Caldwell, P.C.
*Name of Party*

makes the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> No.

2.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

> No.

---

CERTIFICATE OF SERVICE

I certify that on _____ June 16, 2014 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Susan Baker Manning

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.