No. 14-1341

In the
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

APRIL DEBOER, *et al.*,

      Plaintiffs-Appellees,

v.

RICHARD SNYDER, *et al.*,

      Defendants-Appellants.

Appeal from the United States District Court
Eastern District of Michigan, Southern Division
Honorable Bernard A. Friedman

**STATE DEFENDANTS-APPELLANTS' EMERGENCY MOTION
FOR IMMEDIATE CONSIDERATION AND
MOTION FOR STAY PENDING APPEAL**

Defendants, Richard Snyder, in his official capacity as Governor of

the State of Michigan, and Bill Schuette, in his official capacity as the

Michigan Attorney General, move this Court, under Federal Rule of

Appellate Procedure 8, for a stay of the district court's March 21, 2014

opinion and order pending appeal to this Court.

**INTRODUCTION**

Shortly after a two-week trial, the district court issued its opinion

and order declaring that 2.7 million voters did not have a single rational

reason among them when they passed the Michigan Marriage Amendment, which memorialized the definition of marriage as a union between one man and one woman.  The district court enjoined the State from enforcing this provision of its Constitution and effectively denied the State's motion for a stay pending appeal by not ruling on it in a timely manner, thereby allowing county clerks to immediately issue marriage licenses to same-sex couples for the first time in this State's history.  In the wake of this unprecedented redefinition of marriage in Michigan, the State Defendants request that this Court stay the district court's decision to fully resolve the legal issues this case presents.

Indeed, every federal court that has struck down a marriage amendment has either granted a stay or been reversed by the U.S. Supreme Court for denying a stay.  In *Herbert v. Kitchen*, the Supreme Court reversed the district court's denial of a stay in Utah's marriage case.  Order, *Herbert v. Kitchen*, No. 13A687 (U.S. Jan. 6, 2014), attached as Appendix A.  Following the Court's lead, subsequent district courts have granted stays.  *See De Leon v. Perry*, 2014 WL 715741, at *28 (W.D. Tex. Feb. 26, 2014); *Bostic v. Rainey*, 2014 WL 561978, at *23 (E.D. Va. Feb. 13, 2014); *Bishop v. U.S. ex rel. Holder*, 2014 WL 116013, at *33 (N.D. Okla. Jan. 14, 2014).  Those courts, including the Supreme

Court, have recognized that a stay is necessary given the important public interest in state constitutional amendments about marriage.

Given the monumental impact the district court's order would have on the institution of marriage in Michigan, especially amidst a national debate on the issue, a stay should be considered immediately. Further, a stay is necessary in this case to avoid confusion and to maintain the status quo while the appellate courts decide once and for all how Michigan, along with any other state, may define marriage.

## STATEMENT OF FACTS

The plaintiffs, April DeBoer and Jayne Rowse, individually and as next friend of three minor children, originally filed this lawsuit against the State Defendants, alleging that Michigan's adoption law, Mich. Comp. Laws § 710.24, violates the U.S. Constitution's Equal Protection Clause. (Complaint, Doc. # 1.)

On August 29, 2012, the district court held oral argument on the State Defendants' motion to dismiss the plaintiffs' initial complaint. Following arguments, the district court invited the plaintiffs to amend their complaint to challenge Michigan's Constitutional Amendment, which defines marriage as "the union of one man and one woman."

Mich. Const. art. I, § 25. Despite the State Defendants' objection, the district court granted the plaintiffs leave to file an amended complaint to add a second count, challenging Michigan's Constitutional Amendment regarding marriage under the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the U.S. Constitution. The State Defendants moved to dismiss the amended complaint, but the court again denied dismissal. (Order, Doc. # 54.)

As matters progressed, the parties each moved for summary judgment, and the State Defendants moved for realignment of the parties, given Defendant Oakland County Clerk Lisa Brown's total support of the plaintiffs' request for relief and arguments. The district court denied the State Defendants' motion. (Order, Doc. # 103.)

Following oral arguments on the cross-motions for summary judgment, the district court denied the motions and scheduled a bench trial to begin Tuesday, February 25, 2014. (Order, Doc. # 89.)

In the interim, on November 24, 2013, the plaintiffs filed a motion to bifurcate proceedings, stating that a heightened standard of scrutiny applies in this case with respect to their equal-protection claim based on suspect or quasi-suspect class. In their motion, the plaintiffs requested that the trial be bifurcated into two phases. In Phase I of the trial, the

parties would offer evidence under the rational-basis standard.  In
Phase II of the trial, the parties would offer evidence and argument
relating to the heightened-scrutiny standard.  In addition, Phase II of
the trial would proceed only if the district court determined that it is
necessary or appropriate.  Over the State's objection, the district court
granted the plaintiffs' motion to bifurcate the proceedings.  (Order, Doc.
# 105.)

On February 25, 2014, the bench trial in this matter began.  The
plaintiffs presented their case-in-chief during the pendency of that
week.  On March 3, 2014, the bench trial continued with the State
Defendants' case-in-chief.  The State Defendants presented their final
witness on March 6, 2014.  The following day, closing arguments were
made by all parties.

During closing arguments, the State Defendants requested that
the district court enter a stay of its decision should it determine that
either Michigan's adoption law or the Michigan Marriage Amendment
violate the U.S. Constitution.  *See* 3/7/14 Hr'g Tr. at __.

On March 21, 2014, the district court issued its decision, holding
that Michigan's Marriage Amendment is unconstitutional under the
Equal Protection Clause of the Constitution and enjoining enforcement

of the amendment.  Additionally, the district court effectively denied the stay pending appeal by failing to rule on it.

## ARGUMENT

A four-prong test is generally used to determine the appropriate-ness of a stay pending appeal.  These four prongs are:  (1) the likelihood of success on appeal; (2) the threat of irreparable harm if the stay or injunction is not granted; (3) the absence of harm to opposing parties if the stay or injunction is granted; and (4) any risk of harm to the public interest.  *Grutter v. Bollinger*, 247 F.3d 631, 632 (6th Cir. 2001).  The Supreme Court has already applied this test in precisely this context, and it concluded that the balance of the factors weighs in favor of a stay pending appeal.  See Order, *Herbert v. Kitchen* (Appendix A).

## I.    The State Defendants are likely to succeed on appeal.

The Supreme Court's recent stay of an injunction against enforcement of a state marriage law supports the likelihood of success on appeal because the standard for grant of a stay by the Supreme Court is substantially similar.  *Hollingsworth v. Perry*, 558 U.S. 183, 189 (2010) (per curiam) (noting that a stay is appropriate if there is "a fair prospect that a majority of the Court will vote to reverse the

judgment below."). The Supreme Court or a Circuit Justice "rarely grant[]" a "stay application," but they will do so if they "predict" that a majority of "the Court would . . . set the [district court] order aside." *San Diegans for Mt. Soledad Nat'l War Mem'l v. Paulson*, 548 U.S. 1301, 1302–03 (2006) (Kennedy, J., in chambers). On January 6, 2014, after Justice Sotomayor referred the stay application to all the Justices, the Court stayed the *Kitchen* district court's injunction, thereby signaling the Court's belief that it will ultimately set that order aside. *See* Appendix A, Order, *Herbert v. Kitchen*, No. 13A687 (U.S. Jan. 6, 2014). Thus, the State Defendants are likely to succeed on the merits.

Further, the State Defendants are likely to succeed on appeal because (A) *Baker v. Nelson* forecloses the plaintiffs' claims; (B) the plaintiffs' claims do not implicate a fundamental right; (C) Michigan's Marriage Amendment does not discriminate based on gender or sexual orientation; and (D) Michigan's Marriage Amendment is rational.

### A.    *Baker v. Nelson* **forecloses the plaintiffs' claims**

*Baker v. Nelson*, 409 U.S. 810 (1972), is dispositive of this case. *Hicks v. Miranda*, 422 U.S. 332, 344–45 (1975) ("[L]ower courts are bound by summary decisions by this Court until such time as the Court

informs [them] that [they] are not") (quotation marks omitted).
Perceived "doctrinal developments" do not undermine binding
precedent. No doctrinal developments authorize lower courts to stray
from *Baker*'s force as directly applicable binding precedent. Indeed, if
Supreme Court precedent "has direct application in a case, yet appears
to rest on reasons rejected in some other line of decisions, the [lower
court] should follow the case which directly controls, leaving to [the
Supreme] Court the prerogative of overruling its own decisions."
*Agostini v. Felton*, 521 U.S. 203, 237 (1997) (quotation marks omitted).
Because the Supreme Court has not directed otherwise, *Baker* is
controlling and forecloses the plaintiffs' claims.

**B.     The plaintiffs' claims do not implicate a fundamental
right.**

Fundamental rights are those that "are objectively, deeply rooted
in this Nation's history and tradition." *Washington v. Glucksberg*, 521
U.S. 702, 720–21 (1997) (quotation marks and citation omitted). The
right to marry that has been fundamental to our Nation (and Michigan)
has not included same-sex marriage, as numerous courts have
recognized. *See, e.g.*, *Andersen v. King Cnty.*, 138 P.3d 963, 979 (Wash.
2006) (en banc); *Hernandez v. Robles*, 855 N.E.2d 1, 10 (N.Y. 2006);

*Lewis v. Harris*, 908 A.2d 196, 211 (N.J. 2006); *Dean v. District of Columbia*, 653 A.2d 307, 333 (D.C. 1995). In fact, "language in *Windsor* indicates that same-sex marriage [is] a 'new' right" rather than a fundamental one. *See Bishop v. United States*, No. 04-CV-848-TCK-TLW, 2014 WL 116013, at *24 n.33 (N.D. Okla. Jan. 14, 2014), attached as Appendix B. The *Windsor* Court observed that "until recent years, many citizens had not even considered the possibility that two persons of the same sex might aspire" to marry. *United States v. Windsor*, 133 S. Ct. 2675, 2689 (2013). The Supreme Court contrasted this with "marriage between a man and a woman," which has "been thought of . . . as essential to the very definition of that term and to its role and function throughout the history of civilization." *Id.* Thus, because the right to marry someone of the same sex is not deeply rooted in our Nation's history, the plaintiffs' claims do not implicate a fundamental right.

## C.    Michigan's Marriage Amendment does not discriminate based on gender or sexual orientation.

The Michigan Marriage Amendment does not discriminate based on gender. Rather, the amendment is gender-neutral on its face—the prohibition on same-sex marriage is applied equally to men and women.

*See, e.g., Jackson v. Abercrombie*, 884 F. Supp. 2d 1065, 1098–099 (D. Haw. 2012) (collecting cases). And to the extent that sexual orientation may be at issue, equal-protection claims involving sexual orientation are governed by rational-basis review. *Davis v. Prison Health Serv.*, 679 F.3d 433, 438 (6th Cir. 2012); *Scarbrough v. Morgan Cnty Bd. of Educ.*, 470 F.3d 250, 261 (6th Cir. 2006). This is because "homosexuality is not a suspect class in this circuit[.]" *Scarbrough*, 470 F.3d at 261.

### D.    Michigan's Marriage Amendment is rational.

Under rational-basis review, a court does not judge the perceived wisdom or fairness of a law, nor does it examine the actual rationale for the law when adopted, but asks *only* whether "there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Heller v. Doe*, 509 U.S. 312, 319–20 (1993) (quoting *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)). Rational-basis review is satisfied when "the inclusion of one group promotes a legitimate governmental purpose, and the addition of other groups would not." *Johnson v. Robison*, 415 U.S. 361, 383 (1974). Thus, "the relevant question is whether an opposite-sex definition of marriage

furthers legitimate interests that would not be furthered, or furthered to the same degree, by allowing same-sex couples to marry." *Jackson*, 884 F. Supp. 2d at 1107. Similarly, rational-basis review does not require narrow tailoring, so questions about whether marriage is over-inclusive (because it allows opposite-sex couples who cannot procreate to marry) or under-inclusive are beside the point. *See Vance v. Bradley*, 440 U.S. 93, 108 (1979) (stating that a classification may be "both underinclusive and overinclusive").

Here, the plaintiffs did not (and cannot) negate every conceivable basis Michigan voters may have had for retaining the definition of marriage. Retaining the definition of marriage between one man and one woman furthers State interests that would not be furthered, or furthered to the same degree, by allowing same-sex couples to marry, due to the unique relationship between men and women and their natural ability to bear children. It was rational, indeed reasonable, for the people of the State of Michigan to define marriage to promote this as the ideal setting for raising children. It was also rational for the people of the State of Michigan to proceed with caution in redefining marriage, especially when social science in this area is so unsettled. The district court erred in concluding to the contrary.

11

**1.    It was rational for the people of the State of Michigan to define marriage to encourage the ideal setting in which to raise children—a family with both a mom and a dad.**

The bedrock of marriage in Michigan, along with dozens of other states, is a union between one man and one woman.  Only this union reflects the unique ability for men and women to have children, to serve as role models for their children, and for parents to have a biological connection to their children.  The definition corresponds to the reality of how children are most often born.  Not surprisingly, federal and state courts have, *en masse*, agreed that responsible procreation and childrearing are well-recognized as legitimate state interests served by marriage.[1]

Thus, the district court erred in concluding that it was irrational for Michigan voters to decide that, all other things being equal, it is best for a child to be raised by his or her mom and dad.

---

[1]*See, e.g., Jackson*, 884 F. Supp. 2d at 1113; *Sevcik v. Sandoval*, 911 F. Supp. 2d 996, 1015–16 (D. Nev. 2012); *Citizens for Equal Prot. v. Bruning*, 455 F.3d 859, 867 (8th Cir. 2006); *Smelt v. County of Orange*, 374 F. Supp. 2d 861, 880 (C.D. Cal. 2005); *Wilson v. Ake*, 354 F. Supp. 2d 1298, 1308 (M.D. Fla. 2005); *In re Kandu*, 315 B.R. 123, 145 (Bankr. W.D. Wash. 2004); *Standhardt v. Super. Court*, 77 P.3d 451, 461–62 (Ariz. Ct. App. 2003); *Dean*, 653 A.2d at 333; *Baehr v. Lewin*, 852 P.2d 44, 55–56 (Haw. 1993).

2.    **It was rational—even prudent—for the people of the State of Michigan to proceed with caution in redefining marriage, given the scientific disagreement in the area of same-sex parenting.**

At minimum, the social sciences indicate that research in this area is still in its infancy, which merits the people, and courts, proceeding with caution in redefining marriage in Michigan.

The U.S. Supreme Court has held that when there is disagreement in the sciences, states are permitted to set the bounds of its laws until the disagreements are resolved. When a legislature "undertakes to act in areas fraught with medical and scientific uncertainties, legislative options must be especially broad and courts should be cautious not to rewrite legislation," even if the judge is in a position to effectuate change. *Marshall v. United States*, 414 U.S. 417, 427 (1974). In essence, states may proceed with caution in areas of scientific uncertainty.

That is the case here. As the evidence adduced at trial shows, studies have come to differing conclusions on the issue of whether same-sex couples raise children as well as opposite-sex couples. (3/3/14 Trial Tr. at 29–30; *see also* 2/25/14 Trial Tr. at 14, 21–25 (Brodzinsky); 3/4/14 Trial Tr. at 46–48 (Price); 3/3/14 Trial Tr. at 107 (Regnerus); 3/5/14

Trial Tr. at 23–24 (Marks—conducting survey of 59 studies); Doc # 71-1 (Brief of Amicus Curiae Michigan Family Forum at 11–12, 15–19)). Ultimately, the testimony showed that this area is "fraught with . . . scientific uncertainties." *See Marshall*, 414 U.S. at 427. Accordingly, it was rational—even prudent—for the State to proceed with caution in this area by retaining the definition of marriage. Thus, the State Defendants are likely to succeed on the merits on appeal.

## II.  The threat of irreparable harm in the absence of a stay is real.

If the district court's decision is not stayed pending appeal, the threat of irreparable harm both to the State and to individuals who may wish to try to take advantage of the injunction is very real.

As to the harm to the State, "it is clear that a state suffers irreparable injury whenever an enactment of its people . . . is enjoined." *Coalition for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997) (citing *New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers) ("It also seems to me that any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."). The Supreme Court recently affirmed a state's unique interests in its

marital statutes when it noted that "[t]he recognition of civil marriages is central to state domestic relations law applicable to its residents and citizens." *Windsor*, 133 S. Ct. at 2691.  *Windsor* affirmed that "'[e]ach state as a sovereign has a rightful and legitimate concern in the marital status of persons domiciled within its borders'" and made clear that "[t]he definition of marriage is the foundation of the State's broader authority to regulate the subject of domestic relations with respect to the '[p]rotection of offspring, property interests, and the enforcement of marital responsibilities.'" *Id.* at 2675 (quoting *Williams v. North Carolina*, 317 U.S. 287, 298 (1942)).  Forcing Michigan to violate its "rightful and legitimate concerns in the marital status of persons" constitutes irreparable harm to the State's sovereignty.  In addition, the State will face administrative burdens associated with issuing licenses under a cloud of uncertainty during appeal.

The recent case in Utah serves as an example of the practical harms that may occur to the State and to individuals absent a stay.  In that case, the district court and circuit court declined to issue a stay.  Order on Motion to Stay, *Kitchen v. Herbert*, No. 2:13-cv-00217-RJS (D. Utah Dec. 23, 2013); Order Denying Emergency Motion for Stay and Temporary Motion for Stay, *Kitchen v. Herbert*, 12-4178 (10th Cir. Dec.

24, 2013).  As a result, many same-sex couples flocked to clerks' offices to obtain marriage licenses which were issued to them in accord with the district court's injunction.  Brady McCombs, *Supreme Court Complicates Gay Marriages in Utah*, AP (Jan. 8, 2014), http://hosted.ap.org/dynamic/stories/U/US_GAY_MARRIAGE_UTAH?SITE=AP&SECTION=HOME&TEMPLATE=DEFAULT&CTIME=2014-01-08-13-41-21.

Days later, however, the U.S. Supreme Court granted a stay of the injunction, and Utah's laws that recognize marriage as between a man and a woman institution went back into effect—thus, the state does not recognize the licenses that were issued prior to the Supreme Court's grant of the stay.  Press Release, Office of the Utah Governor, *Governor's Office gives direction to state agencies on same-sex marriages* (Jan. 8, 2014), http://www.utah.gov/governor/news_media /article.html?article=9617.  In addition to those whose licenses are no longer valid, individuals who planned ceremonies were not able to complete them, and financial and family planning decisions made upon the assumption that the state would recognize same-sex marriage licenses are now a nullity.

Since the State Defendants are likely to succeed on appeal, failure to stay the district court's injunction pending appeal would likely result in similar injuries. State officials and myriad administrative agencies would have to revise regulations to accommodate the injunction—but may have to revise them back if this Court, or the Supreme Court ultimately upholds Michigan's Marriage Amendment. The plaintiffs or others might obtain marriage licenses during the brief interim while the State Defendants appeal the district court's decision, only to have them rendered a nullity during or after the appeals process, thereby throwing their legal status into confusion. Indeed, Defendant Brown, the clerk for Oakland County, made clear at trial that she—and several other clerks—were ready, willing, and able to issue licenses immediately upon the district court's ruling. (2/25/14 Trial Tr (vol 1) pp 50, 54–55; 3/3/14 Trial Tr (vol 5) pp 17, 21, 23, 29).

The State's interests in enforcing its own laws and in ensuring administrative clarity, as well as individual interests in certainty regarding marriage plans, demonstrate the irreparable injury that is likely to occur in the absence of a stay.

### III. Maintaining the status quo by granting a stay will not cause irreparable harm to the parties.

If the Court grants the requested stay, the only potential harm the plaintiffs may suffer is a delay in their ability to obtain marriage licenses in Michigan. This is the current status quo, and has been since the inception of the State, and this, therefore, does not impose an irreparable harm on the parties. Moreover, while violation of an established constitutional right may inflict irreparable harm, *see Elrod v. Burns*, 427 U.S. 347, 373 (1976), that doctrine does not apply here, where the plaintiffs seek to establish a novel constitutional right through litigation. The plaintiffs suffer no constitutional injury from awaiting a final judicial determination of their claims before receiving the marriage licenses they seek. *Cf. Rostker v. Goldberg*, 448 U.S. 1306, 1310 (1980) (reasoning that the inconvenience of compelling respondents to register for the draft while their constitutional challenge is finally determined does not "outweigh[] the gravity of the harm" to the government "should the stay requested be refused.").

On the other hand, if a stay is not granted and the State Defendants are enjoined from enforcing state law pending appeal, irreparable harm will occur to the State, and may occur to the plaintiffs,

18

and other individuals seeking state marriage licenses in the interim given the uncertain status of the law pending further appeal.

## IV.   Maintaining the status quo serves the public interest.

Michigan citizens have an interest in deciding, through the democratic process, public policy issues of such societal importance as whether to retain the traditional definition of marriage.  Removing the decision from the people is a harm to the public interest.

The public also has an interest in certainty and in avoiding unnecessary expenditures.  As outlined above, should a stay *not* be granted, marriage licenses would be issued under a cloud of uncertainty, the State would face administrative burdens, and actions taken in reliance on the licenses would impact employers, creditors, and others.

A stay would serve the public interest by preserving the status quo and allowing the appeals process to proceed on an issue of substantial state and national importance while *preventing* irreparable injury to the state and its citizens in the interim.

# RELIEF REQUESTED

The Supreme Court has already determined that a stay pending appeal is warranted when a district court strikes down a state constitutional amendment defining marriage.  Accordingly, the State Defendants respectfully request that this Court:  (1) grant immediate consideration and (2) enter an order staying the district court's opinion and order pending final resolution of the appeal in this Court.

Respectfully submitted,

Bill Schuette
Attorney General

*/s/ Aaron D. Lindstrom*
Solicitor General
Co-Counsel of Record
P.O. Box 30212
Lansing, MI 48909
(517) 373-1110
LindstromA@michigan.gov

Kristin M. Heyse
Assistant Attorney General
Co-Counsel of Record
Attorneys for State Defendants
Health, Education, and Family
Services Division
P.O. Box 30758
Lansing, MI 48909
(517) 373-7700

Dated:  March 21, 2014

# CERTIFICATE OF SERVICE

I certify that on March 21, 2014, the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

*/s/Aaron D. Lindstrom*
Solicitor General
Co-Counsel of Record
P.O. Box 30212
Lansing, MI 48909
(517) 373-1110
LindstromA@michigan.gov